# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00010-CV

**Michelle Brkich formerly known as Michelle Woodall, Appellant**

**v.**

**Jeffrey Daren Woodall, Appellee**

### FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 395TH JUDICIAL DISTRICT
### NO. 99-1003-F368-395, HONORABLE MICHAEL JERGINS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Michelle Brkich and Jeffrey Woodall divorced on October 14, 1999. In the divorce decree, the court appointed Brkich sole managing conservator of the couple's two children, R.E.W. and M.S.W., giving her the right to determine the children's primary residence anywhere within the United States. Woodall was appointed possessory conservator, ordered to pay child support, and ordered to pay one hundred percent of the children's uninsured medical expenses. In December 2004, after learning of Brkich's plans to move with the children to Boise, Idaho, Woodall filed a motion to modify the divorce decree. He asked that the district court appoint him joint managing conservator along with Brkich, appoint him the parent with the right to establish the primary residence of the children or the right to make medical decisions on the children's behalf, modify child support accordingly, grant him extended possession, and impose a geographical restriction limiting the children's primary residence to Williamson and contiguous counties. Brkich opposed

these requests and in turn moved to increase child support payments in light of Woodall's increased income. The court modified the decree by increasing child support as Brkich requested, appointing Woodall and Brkich joint managing conservators, restricting the primary residence of the children to Williamson and contiguous counties, granting Woodall extended possession, ordering Woodall and Brkich to each pay one-half of the children's uninsured medical expenses, ordering each parent to give 72-hours' notice of the children's routine medical appointments and one-hour's notice of emergency medical treatment to the other parent, and ordering the children to attend six months of therapy. Brkich appeals the modifications relating to conservatorship, possession and access, and the geographic restriction on the children's residency. We will affirm the trial court's order.

**BACKGROUND**

Woodall argued at the hearing that the divorce decree should be modified because of his continuous involvement in the children's lives following the divorce. He testified that he exercises all his periods of possession, that he attends most of R.E.W.'s baseball practices and games, and that he is involved with M.S.W.'s activities to the extent he is able.

Woodall also argued that he is concerned that some of the more aggressive medical testing Brkich seeks for their son R.E.W. is not in his best interest. R.E.W., now nine years old, has been diagnosed with chronic sinusitis and asthma. He also suffers from persistent respiratory problems, leading doctors to believe that he has allergies, although he has tested negative for allergies in multiple tests. Dr. John Nowlin, a pediatric ear, nose, and throat surgeon, testified that he has operated on R.E.W. nine times, including an adenoidectomy, insertion of several sets of ear tubes, and multiple sinus surgeries.

2

Woodall is concerned about the many tests for obscure diseases suggested by Brkich. Among the tests objected to by Woodall were a second test for lupus after the first one proved negative, a second test for cystic fibrosis after a negative test, a test for juvenile rheumatoid arthritis stemming from a complaint of knee pain, and a test for Kawasaki's disease. Woodall claims that R.E.W.'s doctors take Brkich's assessments at face value because she is a nurse.

Brkich testified that she planned to move with the children to Boise to get away from the allergens plaguing her and the children in the Austin area. Woodall testified that he thought Brkich chose Boise to be closer to her parents in Medicine Hat, Alberta. Brkich testified that she had not consulted any allergists in Boise, although she had researched general information on Boise's climate and pollution index.

Brkich appeals the trial court's orders designating her and Woodall joint managing conservators, granting Woodall extended possession, and imposing a geographical restriction limiting the primary residence of the children to Williamson and contiguous counties.[1] Brkich raises two issues regarding those modifications. First, she argues that Woodall presented legally and factually insufficient evidence to support the trial court's finding of a material and substantial change in circumstances since the entry of the divorce decree and its finding that a modification would be in the best interest of the children. *See* Tex. Fam. Code Ann. § 156.101 (West Supp. 2006). Brkich contends that the trial court abused its discretion by making these findings. Second, she argues that the trial court abused its discretion by ordering the geographic restriction on the children's residence.

---

[1] Brkich does not appeal the orders that she pay one-half of the children's uninsured medical expenses, providing for stricter notice relating to medical appointments, or that the children attend therapy. Woodall does not appeal the increased child support or any of the order's other provisions.

**STANDARD OF REVIEW**

Where, as here, sufficiency-of-the-evidence and abuse-of-discretion standards overlap, as often occurs in family law cases, appellate courts employ a hybrid analysis. *Echols v. Olivarez*, 85 S.W.3d 475, 477 (Tex. App.—Austin 2002, no pet.). In reviewing the legal sufficiency of the evidence, we credit favorable evidence if a reasonable fact-finder could, and we disregard contrary evidence unless a reasonable fact-finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We must affirm the trial court if the evidence presented would allow a reasonable fact-finder to make the judgment under review. *Id.* In reviewing the factual sufficiency of the evidence, we examine all the evidence and reverse only if the trial court's finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 244 S.W.2d 660, 661 (Tex. 1951).

A trial court's modification order will not be reversed in the absence of an abuse of discretion. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *Echols*, 85 S.W.3d at 477. A trial court abuses its discretion when it acts in an arbitrary and unreasonable manner or when it acts without reference to any guiding principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985); *Echols*, 85 S.W.3d at 477. The fact that a trial court may decide a matter within its discretionary authority differently than an appellate court would in a similar circumstance does not demonstrate an abuse of discretion. *Downer*, 701 S.W.2d at 241-42; *Echols*, 85 S.W.3d at 477. An abuse of discretion does not occur as long as some evidence of a probative character exists to support the trial court's decision. *Echols*, 85 S.W.3d at 477.

Once it has been determined that the abuse-of-discretion standard applies, an appellate court engages in a two-pronged inquiry: (1) whether the trial court had sufficient

4

information on which to exercise its discretion; and (2) whether the trial court erred in its application of that discretion. *Id.* at 477-78. The traditional sufficiency review comes into play with regard to the first question; however, the inquiry does not end there. *Id.* at 478. The appellate court then proceeds to determine whether, based on the elicited evidence, the trial court made a reasonable decision. *Id.*

## DISCUSSION

In her first issue, Brkich contends that the district court abused its discretion in modifying the divorce decree because the evidence presented at the hearing was legally and factually insufficient to support findings that there has been a material and substantial change in circumstances since the divorce decree was entered and that a modification would be in the children's best interest. A conservatorship may be modified if the party requesting the modification shows that the circumstances of a child, a conservator, or other party affected by the order have materially and substantially changed since the date of the rendition of the order and that modification would be in the best interest of the child. Tex. Fam. Code Ann. § 156.101.

**Material and Substantial Change in Circumstances**

The trial court made the following finding of fact: "1. The circumstances of the children, or one of the parents have materially and substantially changed since the date of the Decree of Divorce." Though the trial court did not specify which circumstance had changed or for whom, it made an implied finding of at least one specific change in circumstances. Thus we will affirm if this finding can be supported by any legal theory. *See In re W.E.R.*, 669 S.W.2d 716, 717 (Tex.

1984) (holding that trial court judgments should be affirmed if any legal theory supports implied fact findings).

Woodall argues that Brkich's intended relocation of the children to another state constitutes a substantial change in circumstances. Our sister court in El Paso has articulated a number of nonexclusive factors to determine whether a relocation establishes a material and substantial change in circumstances. *See Bates v. Tesar*, 81 S.W.3d 411, 430 (Tex. App.—El Paso 2002, no pet.). The factors are: the distance involved; the quality of the relationship between the noncustodial parent and the children; the nature and quality of the children's contacts with the noncustodial parent; whether relocation would deprive the noncustodial parent of regular and meaningful access to the children; the impact of the move on the quantity and quality of the children's future contacts with the noncustodial parent; the motive for the move; the motive for opposing the move; the feasibility of preserving the relationship between the noncustodial parent and the children through suitable visitation arrangements; and the proximity, availability, and safety of travel arrangements. *Id.*

The distance between Austin and Boise is approximately 1,400 miles. Woodall testified that he exercises all his visitation periods, attends most of R.E.W.'s baseball games and practices, and is as involved with M.S.W.'s activities as he can be. Brkich herself testified that Woodall is quite involved in his children's lives and that the children are attached to him. During the five years between the divorce and Woodall's modification suit, the children saw their father regularly and he lived nearby. Brkich's proposed relocation would deprive Woodall of his right to visitation with the children on Wednesdays, as the divorce decree authorizes these periods of visitation for parents who reside 100 or fewer miles apart, but not for parents who reside more than

6

100 miles apart. The move would also make exercising Woodall's other periods of visitation more time-consuming and expensive.

Brkich testified that round-trip tickets from Boise to Austin were available for around $200. She also testified that she did not believe that the children could fly unaccompanied. Brkich suggested that R.E.W. and M.S.W. could fly to Texas with her husband, who would be flying to San Antonio once a month to see his son.

The motive for the move is disputed. Woodall claims that Brkich wants to move to Boise to be close to her parents in Canada. Brkich states that she wants to move to Boise to escape the allergens in Austin that are causing her and her children to suffer. However, R.E.W., whose health was the focus of much of the testimony at the hearing, has never tested positive for allergies. Brkich testified that she did not contact an allergist in Boise nor research the specific allergens that are prevalent in Boise. She stated that she relied on statements from doctors that for allergies, almost anywhere is better than Austin. Also, Brkich allows two cats and a rabbit to stay inside the house where R.E.W. lives, over the objection of R.E.W.'s primary care physician. There was no evidence presented at the hearing that the motive for Woodall's opposition to Brkich's intended relocation is anything other than concern for his relationship with the children and their well-being.

On these facts, we hold that the trial court did not abuse its discretion in finding that a material and substantial change in circumstances of the parents and children had occurred since the entry of the divorce decree.

**Best Interest**

The trial court also made fact findings that each of the modifications it ordered was in the children's best interest. In the remainder of her first issue, Brkich argues that there was legally

7

and factually insufficient evidence to support a finding that a modification regarding conservatorship would be in the best interest of the children, and that the trial court abused its discretion in so finding. Brkich argues in her second issue that the trial court abused its discretion in imposing the residency restriction. We will address these issues together, dealing with each modification in turn.

The Texas Supreme Court has identified a number of nonexclusive factors to be considered in determining the best interest of children. *See Holley v. Adams*, 544 S.W.2d 367, 371-372 (Tex. 1976). The factors include: the desires of the children, the emotional and physical needs of the children now and in the future, the emotional and physical danger to the children now and in the future, the parental abilities of the individuals seeking custody, the plans for the children by the parents, the stability of the home, the acts or omissions of the parents which may indicate that the existing parent-child relationship is not a proper one, and any excuse for the acts or omissions of the parents. *Id.*

Our review must give deference to the trial court's credibility determinations because it was able to observe the demeanor of the witnesses. *In re De la Pena*, 999 S.W.2d 521, 526 (Tex. App.—El Paso 1999, no pet.). An abuse of discretion normally does not occur when the trial court bases its decision on conflicting evidence. *In re K.R.P.*, 80 S.W.3d 669, 674 (Tex. App.—Houston [1st Dist.] 2002, pet. denied).

With regard to Brkich's intended relocation, the trial court heard testimony that Woodall is involved in R.E.W. and M.S.W.'s lives, and that the children are attached to him. The trial court also received evidence that the frequency of Woodall's visitation with his children would inevitably decrease if Brkich were to move with them to Boise. Evidence was presented that R.E.W.

8

has never tested positive for allergies, although his doctors believe that allergies are at least partially to blame for his chronic sinus difficulties. However, Brkich allows two cats and a rabbit to stay inside her home where R.E.W. lives, over his doctor's objections. Also, Brkich did not investigate allergens in Boise; instead she relied on general statements that almost anywhere is better than Austin when it comes to allergies. Based on this evidence, the trial court could reasonably have concluded that maximizing the children's time with their father was more important than any health benefits the children may or may not have realized by the move, and that imposing a geographical restriction on the primary residence of the children was in the children's best interest. The trial court did not abuse its discretion by imposing the restriction.

The increase in Woodall's visitation rights is minimal. It allows him to convert more of his visitation periods to overnight visitation than under the original divorce decree. This modification was not the subject of argument at the hearing nor is it specifically mentioned in Brkich's brief. The facts that Woodall is involved in his children's lives and that they are attached to him provide sufficient evidence that this modification was in the best interest of the children. The trial court did not abuse its discretion by granting Woodall extended visitation.

The final modification Brkich complains of is the appointment of both parents as joint managing conservators, replacing Brkich's sole managing conservatorship. We note that the trial court did not remove Brkich's power to determine the children's primary residence, although it imposed the geographic restriction discussed above. Also, the court did not order a significant increase in Woodall's visitation, but increased the amount of child support Woodall pays Brkich. The main change between Brkich's sole managing conservatorship and the joint managing conservatorship is that now both parents have joint control over medical decisions for the children.

9

The court heard evidence of Brkich's aggressive medical testing of R.E.W. Although R.E.W.'s doctors testified that Brkich did not request that any procedures be performed that were not medically necessary, R.E.W.'s primary care physician testified that Brkich "becomes alarmed more easily than other people." Dr. Nowlin testified that Woodall had "very reasonable questions" about the testing and treatment of R.E.W. Woodall testified that he believes the interventions Brkich seeks for R.E.W. go too far, and that Woodall would ask for a second opinion and generally treat R.E.W. as a normal child rather than a sick child. Deferring to the trial court's credibility determinations, it could have reasonably found that allowing Woodall to act as a balance to Brkich by giving them both decisionmaking power over the children's medical treatment would be in the children's best interest. This could be accomplished by naming the parents joint managing conservators. The trial court did not abuse its discretion in appointing Woodall and Brkich joint managing conservators.

## CONCLUSION

Because we overrule all of Brkich's issues on appeal, we affirm the trial court's order modifying conservatorship.

_____

Bea Ann Smith, Justice

Before Justices B. A. Smith, Puryear and Waldrop:   Opinion by Justice B. A. Smith;
    Concurring Opinion by Justice Puryear

Affirmed

Filed:   November 2, 2006

10