# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00791-CV

**Robert Holmes, Jr., Appellant**

**v.**

**Tracy Nannette Holmes, Appellee**

## FROM THE COUNTY COURT AT LAW NO. 3 OF WILLIAMSON COUNTY, NO. 07-1294-FC3, HONORABLE DONALD HIGGINBOTHAM, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Robert Holmes, Jr., appeals *pro se* the trial court's final divorce decree. Holmes (i) challenges the portions of the decree regarding control, possession, amount and terms of child support, division of the marital estate, and income tax dependency exemptions and (ii) complains of the trial court's order that appellee Tracy Nannette Holmes's attorney prepare the decree and its failure to award "back child-visits." Because we find no error in the divorce decree, we affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Robert Holmes, Jr., and Tracy Nannette McClain[1] were married in January 1991 by proxy while Holmes was serving overseas in the military. Four children were born of the marriage.

---

[1] We refer to Tracy Nannette McClain Holmes as McClain.

Holmes and McClain separated in November 2005 when Holmes left his wife and children and moved to Georgia to live with his brother. The children visited Holmes in Georgia when they were young, but it appears from the record that the visits ceased at some point. McClain filed for divorce in June 2007. Holmes, who was served by substituted service, defaulted, and the trial court entered a divorce decree in September 2007. Holmes filed a motion for new trial, which the trial court granted in January 2008. In April 2008, Holmes filed a motion for genetic testing of the children, which established Holmes's paternity as to the four children.

**The Mediated Partial Settlement Agreement**

The trial court referred the case to mediation in August 2008. Holmes participated in the mediation by telephone, and on September 15, 2008, Holmes and McClain agreed to a Memorandum of Partial Settlement. The settlement included agreements that:

- The parties would divorce on grounds of insupportability,

- Holmes and McClain would be named joint managing conservators,

- McClain would provide the children's health insurance through her employment,

- Holmes would pay $130 per month in child support, including reimbursement to McClain for one-half the cost of the children's health insurance, with credit for social security and VA benefits the children receive through Holmes, and

- Holmes owed $650 in retroactive child support.

Holmes and McClain expressly reserved for trial the issues of possession, division of debts, and the determination as to who would be authorized to decide psychological and psychiatric treatment for, consent to legal action for, manage the estates of, act as agent for, obtain

2

passports for, and be entitled to the services and earnings of the children. They also left unresolved the issues of who would designate the children's primary residence and make decisions concerning their education.

**The Trial**

In a brief hearing, the court considered the parties' mediated settlement agreement and heard the testimony of McClain. Holmes did not appear except through his attorney. McClain testified concerning her relationship with Holmes and Holmes's relationship with their children. She stated that she and Holmes were married in January 1991 and ceased living together in November 2005. She further stated that they have four children, that Holmes requested paternity tests on all four children, and that the tests confirmed that Holmes is their father. McClain testified that she has no problem with Holmes's visitation with the children but was asking for a "stair step [amount] because he's been away from the children for so long." She added that the children have "a bit of a hesitancy as far as seeing him" and that she is "concerned about their safety, because of how he left the family." She also stated that she has tried to call, but Holmes "won't talk to [her] as far as the kids are concerned."

McClain also stated her concerns about Holmes's circumstances and conduct. She testified that Holmes now lives in Georgia, that she "[does not] know what he is [currently] doing," and that he has "a diagnosis of Post Traumatic Stress Disorder." She further testified that when the kids were younger, they visited him in Georgia, and that Holmes "would take off drinking, and a lot of partying, and they would call because of different things."

3

McClain also testified concerning the issues not settled in mediation. She stated that it was not practical or reasonable to expect that she and Holmes could agree on any of the decision-making issues left unresolved after the mediation. McClain testified that there were debts that were hers, debts that were Holmes's, and debts that belonged to them jointly. She further testified that there were some debts that were listed in her name that she did not know anything about until she started getting calls and letters from collectors. Regarding one of those debts, she stated:

> I received a suit from Capital One for a credit card that I had no knowledge of. So, I took the information, and I went to the headquarters of Capital One and said I received a lawsuit. I don't know what's going on. I requested a signature—the original signature from when the credit card was taken out. I did get some information from this credit card, but it showed that it was not my signature, and they dropped the case. I had no idea about that credit card.

In cross-examination, Holmes's attorney questioned McClain regarding her mental health and the conduct of her son from a previous marriage. McClain testified that she became depressed when her grandfather died, and she took medication for it but had "decided to use exercise and other interventions" and no longer takes it. She stated that her therapist said she had "borderline traits and borderline personality" but denied ever having any thoughts of suicide. She then read from her therapist's notes, which included a reference to "thoughts of suicide" and stated, "That was in '05." Regarding her son from a previous marriage, McClain testified that he had been convicted of "terroristic threat" against Holmes and "got in a lot of trouble in school," but that he now has an apartment and no longer lives with her.

4

**The Trial Court's Ruling**

      The trial court approved and confirmed the mediated settlement agreement and incorporated its terms into the final decree. The decree awarded McClain the exclusive right, after consultation with Holmes, to make decisions as to the expressly reserved issues.[2] The trial court also granted McClain the exclusive right, after consultation with Holmes, to make decisions as to the children's education, as well as the exclusive right to designate the primary residence of the children without consulting Holmes.

      The trial court also ordered that:

- Holmes pay child support as agreed in the mediated settlement agreement, including one-half the cost of the children's health insurance, with credit for the social security and VA benefits, and $650 in retroactive child support,[3]

- As additional child support, Holmes purchase a life insurance policy naming McClain as beneficiary for the benefit of the children,

- Holmes pay child support until the earliest of several possible occurrences, including until "any child reaches the age of eighteen years or graduates from high school, whichever occurs later . . . ,"

- The child support be withheld from Holmes's earnings,

- Holmes provide notice of any change of employment, and

- The obligation of child support not terminate on the death of either Holmes or McClain.

---

[2] Regarding the right to obtain passports for the children, the trial court ordered McClain to notify Holmes within five days after the application rather than to consult with him in advance.

[3] The order grants a judgment in favor of McClain for child support arrearages in that amount.

5

The decree included a modified visitation schedule for parents living more than 100 miles from the children, including a "stair step" approach. For the first year, Holmes was granted supervised visitation in Williamson County, Texas, one weekend every other month and one week in the summer and was required to pay all associated expenses. After the first year, Holmes was granted visitation under the standard possession order, depending on the events and circumstances during the first year. The trial court also ordered that Holmes and McClain were jointly liable for debts in both their names and individually liable for debts in their separate names, except that Holmes was ordered liable for the debts incurred in McClain's name of which she testified she had no knowledge. The decree also awarded McClain the exclusive right to claim the children for purposes of the Internal Revenue Service's tax exemption. The final decree of divorce was entered on December 1, 2008. Neither party requested findings of fact and conclusions of law, and the trial court entered none. This appeal followed.

## ANALYSIS

We review a trial court's decisions regarding division of the marital estate, child support, child custody, control, possession, and visitation under an abuse of discretion standard. *Murff v. Murff*, 615 S.W.2d 696, 698-99 (Tex. 1981) (division of the marital estate); *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (child support); *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982) (child custody, control, possession, and visitation). "A trial court abuses its discretion when its ruling is arbitrary, unreasonable or without reference to any guiding rules or legal principles." *K-Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex. 2000). Under an abuse of discretion standard, legal and factual sufficiency challenges to the evidence are not

independent grounds of error but are relevant factors in assessing whether the trial court abused its discretion. *Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex. App.—Austin 2006, pet. denied); *In re D.M.*, 191 S.W.3d 381, 393 (Tex. App.—Austin 2006, pet. denied). Because we apply an abuse of discretion standard to these issues, the traditional sufficiency standards of review overlap the abuse of discretion standard, and appellate courts apply a hybrid analysis. *Zeifman*, 212 S.W.3d at 587-88; *see also Echols v. Olivarez*, 85 S.W.3d 475, 477 (Tex. App.—Austin 2002, no pet.).

Once it has been determined that the abuse of discretion standard applies, an appellate court engages in a two-pronged inquiry: (1) whether the trial court had sufficient information on which to exercise its discretion, and (2) whether the trial court erred in its application of discretion. *Zeifman*, 212 S.W.3d at 588. The traditional sufficiency review comes into play with regard to the first question; however, the inquiry does not end there. *Id.*; *Echols*, 85 S.W.3d at 478. The appellate court then proceeds to determine whether, based on the evidence, the trial court made a reasonable decision, that is, that the court's decision was neither arbitrary nor unreasonable. *Zeifman*, 212 S.W.3d at 588; *Echols*, 85 S.W.3d at 478.

When a trial court does not issue findings of fact and conclusions of law, we imply all findings necessary to support the judgment. *Sixth RMA Partners v. Sibley*, 111 S.W.3d 46, 52 (Tex. 2003). When the appellate record includes the reporter's record, as in this case, the trial court's findings, express or implied, are not conclusive and may be challenged on appeal for evidentiary sufficiency. *Id.* We review a trial court's findings of fact for legal and factual sufficiency of the evidence by the same standards applied to a jury verdict. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). We review a trial court's conclusions of law *de novo* and will

7

uphold the conclusions if the judgment can be sustained on any legal theory supported by the evidence. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). Although a trial court's conclusions of law may not be challenged for factual sufficiency, we may review the legal conclusions drawn from the facts to determine whether the conclusions are correct. *Id.*

In reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the judgment, crediting favorable evidence if a reasonable fact finder could, and disregarding contrary evidence unless a reasonable fact finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). The test is "whether the evidence at trial would enable reasonable and fair-minded people to reach the [judgment] under review." *Id.* at 827. In reviewing factual sufficiency of the evidence, we consider and weigh all of the evidence in the record, and we may overturn a judgment only if it is so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

In all suits regarding conservatorship and possession of and access to children, the best interest of the children "shall always be the primary consideration of the court . . . ." Tex. Fam. Code Ann. § 153.002 (West 2008). The supreme court set out a nonexhaustive list of factors to consider in determining a child's best interest in *Holley v. Adams*, 544 S.W.2d 367 (Tex. 1976). Those factors include the desires of the child, the emotional and physical needs of and danger to the child now and in the future, the parental abilities of the individuals seeking custody, the programs available to assist these individuals to promote the best interest of the child, the stability of the home, the acts or omissions of the parent, which may indicate that the existing parent-child relationship is not a proper one, and any excuse for the acts or omissions of the parent. *Id.* at 371-72.

**Allocation of Parental Rights and Duties**

In his second through ninth issues, Holmes complains of the trial court's decision to award McClain the exclusive right, after consultation with Holmes, to make decisions on the issues left unresolved after mediation. Specifically, he urges that the allocation of rights and duties was not equitable or in the best interest of the children and should be revised. He further contends that the rights and duties should be allocated equally to both parents.

Holmes and McClain had attempted to resolve these issues in mediation and had been unable to do so. McClain testified that it was not practical or reasonable to expect that they would be able to agree on these matters. She also testified that Holmes had left the family in 2005, moved to Georgia, and been away from the children for some time. She also stated that Holmes would not talk to her about the children. Holmes offered no evidence on these issues. Moreover, the Texas Family Code provides that if both parents are appointed conservators, the court "shall specify the rights and duties of a parent that are to be exercised: (1) by each parent independently; (2) by the joint agreement of the parents; and (3) exclusively by one parent." Tex. Fam. Code Ann. § 153.071 (West 2008); *see also id.* § 153.134 (West Supp. 2009).

We conclude that the evidence was sufficient to allow reasonable and fair-minded people to reach the decision reached by the trial court that McClain should be awarded the decision-making rights in issue, *see City of Keller*, 168 S.W.3d at 827, and we cannot say that the decision is so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *See Cain*, 709 S.W.2d at 176. The evidence was therefore legally and factually sufficient to support the trial court's order regarding control, and the trial court's order was neither

9

arbitrary nor unreasonable. *See Zeifman*, 212 S.W.3d at 588; *Echols*, 85 S.W.3d at 478. We overrule Holmes's second through ninth issues.

**Possession**

In his tenth issue, Holmes complains that the trial court's order for modified standard possession, in particular the geographical limitation and the requirement for supervision during the first year, is not in the best interest of the children.[4] The family code provides that there is a rebuttable presumption that the standard possession provides reasonable minimum possession for a parent named joint managing conservator and is in the best interest of the child. *See* Tex. Fam. Code Ann § 153.252 (West 2008). In addition, the family code sets out the factors the court is to consider in ordering other than the standard possession. *See id.* § 153.256 (West 2008). Those factors include the age, developmental status, circumstances, needs, and best interest of the child, the circumstances of the conservators, and any other relevant factors. *Id.*

McClain testified that her children were sixteen, fourteen, twelve, and eleven. McClain also testified that she was not opposed to Holmes's having visitation with the children but asked for a gradual increase in the amount of visitation because he had been away from the children for some time, and the children had some hesitancy about seeing their father. She further testified that she had concerns about the children's safety because of how Holmes had left the family and because, when the children visited when they were younger, they called with concerns about his drinking and "partying." She stated that she had tried to talk to Holmes, but he would not discuss

---

[4] In his eleventh issue, Holmes urges the same complaint as to possession in subsequent years. However we find no geographical limitation or requirement for supervision in possession in subsequent years in the decree. We overrule Holmes's eleventh issue.

10

the children with her. On cross-examination, McClain testified that she had become depressed after her grandfather's death and that her therapist's notes reflected that she had entertained suicidal thoughts in 2005 but that she had dealt with her depression through exercise and therapy. She further stated that her son from a previous marriage, who had been through some difficulties, no longer lives with her.

On this record, we conclude that the evidence was sufficient to allow reasonable and fair-minded people to conclude that the modified standard possession order entered by the trial court was in the children's best interests, *see City of Keller*, 168 S.W.3d at 827, and we cannot say that the order is so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *See Cain*, 709 S.W.2d at 176. The evidence was therefore legally and factually sufficient to support the trial court's modified standard possession order, and we cannot say that the trial court's order was either arbitrary or unreasonable. *See Zeifman*, 212 S.W.3d at 588; *Echols*, 85 S.W.3d at 478. We overrule Holmes's tenth issue.

**Amount of Child Support**

In his twelfth, thirteenth, and sixteenth issues, Holmes complains of the amount of child support the trial court ordered him to pay. The divorce decree ordered Holmes to pay the amount of child support set out in the mediated settlement agreement, including one-half the cost of the children's health insurance and $650 in retroactive child support, to which Holmes expressly agreed. The mediated settlement agreement is a binding contract. *See* Tex. Fam. Code Ann. § 153.0071 (West Supp. 2009). Holmes has not cited any evidence in the record or any authority as

11

to why he should not be held to the provisions regarding child support that he agreed to in the settlement agreement and has therefore waived this issue. *See* Tex. R. App. P. 38.1(i).[5]

Even if Holmes had adequately briefed this issue, however, we see no evidence in the record and have found no authority showing that he should not be obligated to fulfill the terms of the binding mediated settlement agreement. Section 154.124 of the family code authorizes the trial court to enter an order in accordance with the agreement pertaining to child support if it finds that the agreement is in the child's best interest. *See* Tex. Fam. Code Ann. § 154.124 (West 2008). Moreover, as to the obligation to pay one-half of the cost of the health insurance, section 154.182 of the family code requires the trial court to order the obligor of child support to pay as additional child support an amount equal to the actual cost of the health insurance being provided through the obligee's employment, as is the case here, not to exceed a reasonable cost to the obligor. *See id.* § 154.182 (West Supp. 2009). Viewing the evidence in the light most favorable to the decree, and considering the credit given Holmes for the governmental benefits the children receive through him, we would conclude that the trial court did not abuse its discretion in ordering the amount of child support ordered. *See City of Keller*, 168 S.W.3d at 807; *Ziefman*, 212 S.W.3d at 588; *Echols*, 85 S.W.3d at 478. We overrule Holmes's twelfth, thirteenth, and sixteenth issues.

---

[5] A *pro se* litigant is held to the same standards as licensed attorneys and must comply with the applicable laws and rules of procedure. *Wheeler v. Green*, 157 S.W.3d 439, 444 (Tex. 2005). We are, however, obligated to construe the issues raised in Holmes's brief liberally. *See* Tex. R. App. P. 38.9; *Anderson v. Gilbert*, 897 S.W.2d 783, 784 (Tex. 1995).

**Other Terms of Child Support**

In his fourteenth, fifteenth, and eighteenth through twentieth issues, Holmes challenges other terms of the trial court's order regarding child support, which are based on provisions of the family code. In his fourteenth issue, Holmes complains of the trial court's order that he pay child support after the children reach eighteen. The language of the decree, however, tracks the language of section 154.001 of the family code, which gives the trial court authority to order child support "until the child is 18 years of age or until graduation from high school, whichever occurs later." Tex. Fam. Code Ann. § 154.001 (West 2008).

Holmes's fifteenth issue is a challenge to the trial court's order that child support be withheld from his earnings and that he notify the court and McClain of any change in employment. Section 154.007 of the family code provides that the court "shall order" income withholding for periodic payments of child support. *See id.* § 154.007(a) (West Supp. 2009). In addition, section 105.006 provides that the order "must contain" a requirement that the parties notify the court and the other party of any changes in the information required by section 105.006, which includes the name, address, and phone number of employment. *See id.* § 105.006(b) (West Supp. 2009).

In his eighteenth issue, Holmes complains of the trial court's order that, as additional child support, Holmes purchase a life insurance policy in an amount not less than $50,000 naming McClain as beneficiary for the benefit of the children. Holmes did not raise this objection with the trial court and offers no evidence or authority on this issue and has therefore waived it. *See* Tex. R. App. P. 33.1, 38.1(i); *In re A.D.A.*, 287 S.W.3d 382, 398 (Tex. App.—Texarkana 2009, no writ). Even if Holmes had preserved error and adequately briefed this issue, however, the family code

provides that the trial court has the discretion to make such an order to provide for the child in the event of the death of a parent and sets out the factors the court is to consider, including the value of the monthly child support and health insurance payments. *See* Tex. Fam. Code Ann. § 154.016 (West 2008).

In his nineteenth and twentieth issues, Holmes complains of the trial court's order that his obligation to pay child support does not terminate at his death or at the death of McClain. Under section 154.015 of the family code, the remaining unpaid balance of child support becomes payable on the death of the obligor. *See id.* § 154.015(b) (West 2008). In addition, section 154.013 of the family code expressly provides that "[a] child support obligation does not terminate on the death of the obligee . . . ." *Id.* § 154.013(a) (West 2008).

The divorce decree follows the requirements of the family code regarding child support. The language tracks the language of the permissive code provisions and complies with the mandatory code provisions. We therefore conclude that the trial court did not abuse its discretion. We overrule Holmes's fourteenth, fifteenth, and eighteenth through twentieth issues.

**Tax Exemption**

Holmes's twenty-fourth issue is a challenge to the trial court's order that McClain be exclusively entitled to claim the children for the purpose of the Internal Revenue Code's dependency exemption. Under the relevant Internal Revenue Code provisions, McClain, as the custodial parent for more than half of each year, is entitled to the exemption. *See* 26 U.S.C. § 152(a), (c)(1)(B)

14

(Supp. 2010).[6] Because the order is consistent with the provisions of the code, we conclude that the trial court did not abuse its discretion and overrule Holmes's twentieth-fourth issue.

**Division of the Marital Estate**

In his twenty-fifth issue, Holmes complains that the trial court ordered him to pay debts that were in McClain's name and were her responsibility. McClain testified that there were certain debts in her name that she knew nothing about until she received communications from debt collectors. She testified that in one instance, she investigated and determined that the signature on file with the credit card company was not her signature. Holmes did not testify or appear at trial. Having offered no evidence as to these disputed debts at the hearing, and having provided no authority or citation to the record on this issue in his briefing, Holmes has waived the right to object on appeal. *See* Tex. R. App. P. 38.1(i).

---

[6] Subsections (a) and (c) of section 152 provide in relevant part:

(a) In general.—For purposes of this subtitle, the term "dependent" means—
   (1) a qualifying child . . . .

 . . .

(c) Qualifying child.—For purposes of this section—
   (1) In general.—The term "qualifying child" means, with respect to any taxpayer for any taxable year, an individual—

 . . .

      (B) who has the same principal place of abode as the taxpayer for more than one-half of such taxable year.

26 U.S.C. § 152(a), (c)(1)(B) (Supp. 2010).

Even had Holmes not waived this issue, however, on the record before us, we would not conclude that the division of debts was manifestly unjust. A trial court is charged with dividing the parties' estate "in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." Tex. Fam. Code Ann. § 7.001 (West 2006). Courts have broad discretion in suits for divorce when dividing the estate, and we presume the trial court properly exercised its discretion. *See Murff*, 615 S.W.2d at 698. The party challenging the division of property has the burden to show that it was not just and right. *Gupta v. Gupta*, No. 03-09-00018-CV, 2010 Tex. App. LEXIS 4841, at *7 (Tex. App.—Austin June 24, 2010, no pet.) (mem. op). Because Holmes has not met that burden, we would conclude on this record that the trial court did not abuse its discretion. We overrule Holmes's twenty-fifth issue.

**Preparation of Decree**

In his twenty-sixth issue, Holmes complains of the trial court's decision to allow McClain's attorney to draft the divorce decree. Holmes failed to object at the hearing when the trial court instructed McClain's attorney to prepare the decree and has failed to adequately brief this issue, thus waiving his right to complain on appeal. *See* Tex. R. App. P. 33.1, 38.1(i); *In re A.D.A.*, 287 S.W.3d at 389. Even if Holmes had not waived this issue, however, we would find no reversible error. Although the parties' mediated settlement agreement contained a provision that Holmes's attorney was to prepare the decree, and section 7.006 of the family code provides that if the court finds the terms of a written agreement to be "just and right," the terms are binding on the court, *see* Tex. Fam. Code Ann. § 7.006 (West 2006), we would conclude on the record before us that any error by the trial court in allowing McClain's attorney to prepare the decree did not cause the rendition of

16

an improper judgment or prevent Holmes from properly presenting the case to this Court and is therefore harmless error. *See* Tex. R. App. P. 44.1. We overrule Holmes's twenty-sixth issue.

**"Back Child-Visits"**

Holmes's twenty-seventh issue is a complaint that the trial court erred in failing to award "back child-visits" while awarding retroactive child support. Holmes agreed to the retroactive child support in the mediated settlement agreement, failed to raise the issue at the final hearing, and offers no authority on this issue in his briefing. Because Holmes has waived this issue, *see* Tex. R. App. P. 33.1, 38.1(i); *In re A.D.A.*, 287 S.W.3d at 389, we overrule Holmes's twenty-seventh issue.[7]

---

[7] Holmes urges five other issues. In his first issue, he complains that the trial court erred in granting the divorce on grounds of insupportability because the children were receiving monies through him, apparently construing "insupportability" to mean a lack of financial support. Because insupportability as a ground for divorce refers instead to discord that destroys the legitimate ends of the marriage, *see* Tex. Fam. Code Ann. § 6.001 (West 2006), and because the parties agreed in their mediated settlement agreement that the divorce would be granted on grounds of insupportability, we conclude that the trial court did not abuse its discretion and overrule Holmes's first issue.

In his seventeenth issue, Holmes argues that the trial court erred in ordering him to pay all of the health insurance costs if the children are enrolled in a health care plan that is not an HMO or PPO. In his twenty-first and twenty-second issues, Holmes complains of the trial court's decision to grant McClain the exclusive right to appoint an agency or nonparent as conservator of the children. Because these issues are not further briefed, and because we find no such provisions in the decree, we overrule Holmes's seventeenth, twenty-first, and twenty-second issues.

In his twenty-third issue, Holmes complains of the trial court's failure to order that if McClain dies before the youngest child reaches eighteen years of age, Holmes should receive the house awarded to McClain in the decree. Because Holmes did not raise this issue with the trial court and presents no authority on it in his briefing, he has waived the right to complain on appeal. *See* Tex. R. App. P. 33.1, 38.1(i); *In re A.D.A.*, 287 S.W.3d at 389. We overrule Holmes's twenty-third issue.

**CONCLUSION**

Having overruled all of Holmes's issues, we affirm the judgment of the trial court.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Puryear, and Pemberton

Affirmed

Filed:   October 5, 2010