# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00410-CV

**Weldon Echols, Jr., Appellant**

**v.**

**Susanna Olivarez, Appellee**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT**
**NO. 96-05084, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING**

---

Appellant Weldon Echols, Jr. appeals from an order of the district court rendered in a suit to modify the parent-child relationship. Echols is the father of the child subject to the modification order. In the order, the court granted appellee Susanna Olivarez, the child=s mother, the exclusive right to establish the child=s primary residence without limitation or restriction. In two issues, Echols contends that the evidence presented was legally and factually insufficient to support a finding: (1) that there was a material and substantial change warranting the modification of the existing order; and (2) that the requested modification would be a positive improvement for and in the best interest of the child. We will affirm the order.

## BACKGROUND

The child, a boy, was born in October 1993. Echols and Olivarez were not married at the time of his birth and never married. Shortly after the child=s birth, Echols and Olivarez began cohabitating. When the child was about two years old, Echols and Olivarez separated. In May 1996, Olivarez filed a petition to establish the child=s paternity, which resulted in an agreed final order establishing Echols=s paternity in April 1997. The order appointed Echols and Olivarez joint managing conservators of the child, and Olivarez was granted the right to establish the child=s primary residence *within the state of Texas*. Since Echols and Olivarez separated, Echols has married and has two other children.

In early 2000, Olivarez gave birth to a second son. She took extended maternity leave from her employment, and her position was filled in her absence. Olivarez=s employer offered her other positions, all lateral moves at her former pay. In addition, her employer offered her a promotion to a new position in Tennessee that paid eight percent more and included an additional ten percent salary bonus. As a result, Olivarez filed a petition to modify the 1997 order, requesting that the district court lift the residence restriction and allow her to move with her family to Tennessee. The district court granted her request, and Echols now appeals.

## STANDARD OF REVIEW

In two issues on appeal, Echols contends that the district court abused her discretion in granting Olivarez=s motion to modify the 1997 order because the evidence presented at trial was legally and

factually insufficient to support the district court=s findings: (1) that there had been a material and substantial change warranting a modification of the original order; and (2) that moving with the child would be a positive improvement for and in the best interest of the child. Where, as here, the sufficiency-of-the-evidence and abuse-of-discretion standards of review overlap, as they frequently do in family law cases, appellate courts employ a hybrid analysis. *Jenkins v. Jenkins*, 16 S.W.3d 473, 477 (Tex. App.CEl Paso 2000, no writ).

In considering the legal sufficiency of the evidence, an appellate court considers only the evidence that supports the trial court=s findings and disregards all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965); *Jenkins*, 16 S.W.3d at 477. If any probative evidence supports the jury=s determination, it must be upheld. *In re King=s Estate*, 244 S.W.2d 660, 661-62 (1951). In reviewing factual sufficiency, we examine all the evidence and reverse only if the trial court=s finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *King=s Estate*, 244 S.W.2d at 660; *Lindsey v. Lindsey*, 965 S.W.2d 589, 591 (Tex. App.CEl Paso 1998, no pet.); *Burtch v. Burtch*, 972 S.W.2d 882, 888-89 (Tex. App.CAustin 1998, no pet.). In an appeal from a bench trial, findings of fact are the equivalent of jury answers to special issues. *Associated Telephone Directory Publishers, Inc v. Five D=s Publishing Co.*, 849 S.W.2d 894, 897 (Tex. App.CAustin 1993, no writ); *A-ABC Appliance of Texas, Inc v. Southwestern Bell Tel. Co.*, 670 S.W.2d 733, 736 (Tex. App.CAustin 1984 writ ref=d n.r.e.). The reviewing court cannot substitute its conclusions for those of the trial court if there is sufficient competent evidence of probative force to support the trial court=s findings. *Downer v. Aquamarine Operators, Inc.*, 707 S.W.2d 738, 242 (Tex. 1985); *Abernathy v. Fehlis*, 911 S.W.2d 845, 848 (Tex. App.CAustin 1995, no writ); *Southwestern Bell Tel.*

3

*Co. v. Johnson*, 389 S.W.2d 645, 648 (Tex. 1965); *Jones v. Strayhorn*, 321 S.W.2d 290, 295 (Tex. 1959).

A trial court=s order modifying a joint managing conservatorship will not be disturbed on appeal unless the complaining party can show a clear abuse of discretion. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex.1982); *Thompson v. Thompson*, 827 S.W.2d 563, 566-67 (Tex. App.CCorpus Christi 1992, writ denied). The test for abuse of discretion is whether the trial court acted in an arbitrary and unreasonable manner, or whether it acted without reference to any guiding principles. *Downer*, 701 S.W.2d at 242. *Ditraglia v.Romano*, 33 S.W.3d 886, 888 (Tex. App.CAustin 2000, no pet.). The fact that a trial court may decide a matter within its discretionary authority in a different manner from an appellate court in a similar circumstance does not demonstrate an abuse of discretion. *Downer*, 701 S.W.2d at 241-42; *Ditraglia*, 33 S.W.3d at 888. The question of conservatorship of a child is left to the sound discretion of the trial court when it sits as trier of fact. *Jeffers v. Wallace*, 615 S.W.2d 252, 253 (Tex. Civ. App.CDallas 1981, no writ). The trial court is in the best position to observe the demeanor and personalities of the witnesses and can Afeel@ the forces, powers, and influences that cannot be discerned by merely reading the record. *Id*. Thus, an abuse of discretion does not occur as long as some evidence of a substantive and probative character exists to support the trial court=s decision. *Valdez v. Valdez*, 930 S.W.2d 725, 731 (Tex. App.CHouston [1st Dist.] 1996, no writ).

Once it has been determined that the abuse-of-discretion standard applies, an appellate court engages in a two-pronged inquiry: (1) whether the trial court had sufficient information on which to exercise its discretion; and (2) whether the trial court erred in its application of discretion. *Lindsey*, 965

**4**

S.W.2d at 592. The traditional sufficiency review comes into play with regard to the first question; however, the inquiry does not end there. *Id*. The appellate court then proceeds to determine whether, based on the elicited evidence, the trial court made a reasonable decision. *Id*. Stated inversely, the appellate court must conclude that the trial court=s decision was neither arbitrary nor unreasonable. *Id*.; *see also, In re De La Pena*, 999 S.W.2d 521 (Tex. App.CEl Paso 1999, no pet.).

## DISCUSSION

By his first issue, Echols contends that the district court abused her discretion in granting Olivarez=s motion to modify the 1997 order because the evidence presented at trial was legally and factually insufficient to support a finding that there has been a material and substantial change warranting a modification of that order. The standard for modifying a joint managing conservatorship has always been less stringent than the standard for modifying a sole managing conservatorship. A joint managing conservatorship may be modified if the party requesting the modification: (1) shows that there has been a material and substantial change in circumstances or shows that the decree has become unworkable or inappropriate under the circumstances;[1] and (2) shows that the modification would be a positive improvement for and in the best interest of the child. *See* Tex. Fam. Code Ann. ' 156.202 (West 1996).[2] The district court made the following finding of fact:

---

[1] Olivarez did not argue at trial that the 1997 order had become unworkable or inappropriate under the existing circumstances, and the district court made no finding to that effect. Instead, Olivarez urged that there had been a material and substantial change in circumstances.

[2] This provision was repealed in 2001. *See* Act of May 22, 2001, 77th Leg., R.S., ch.

5. The circumstances of Susanna Olivarez have changed since the rendition of the Divorce Decree[3] entered April 23, 1997. Since that time, Ms. Olivarez has had a second child, not the subject of this suit. She has moved to a new position with her employer; and she has been promoted to a better job with the same company that involves her relocating outside the state of Texas. This promotion involves more responsibility, more flexibility, opportunity for growth and a raise in pay.

---

1289, 2001 Tex. Gen. Laws 3108, 3111. It was replaced by section 156.101 of the family code. Tex. Fam. Code Ann. ' 156.101 (West Supp. 2002); Act of May 22, 2001, 77th Leg., R.S., ch. 1289, 2001 Tex. Gen. Laws 3108, 3108-09. The new provision Atakes effect September 1, 2001, and applies to an action to modify an order in a suit affecting the parent-child relationship pending on that date or filed on or after that date.@ *Id*. ' 13 at 3111. The final judgment in the present case was rendered by the district court on April 10, 2001, and both parties rely on the prior statute. We will assume, without deciding, that the repealed statute controls the disposition of this cause, and cite to that provision accordingly. *See Lenz v. Lenz*, 45 Tex. Sup. J. 781, 782 n.1; 2002 Tex. LEXIS 75, at *5, n.1 (June 6, 2002). The current statute no longer requires a showing that the modification would be a positive improvement for the child.

[3] Because Olivarez and Echols were never married, there was no divorce decree. Conservatorship and other issues related to the child were resolved in an order entitled ADecree in a Suit Affecting the Parent-Child Relationship.@

(Footnote added.) The evidence presented at trial indicated that Olivarez had developed a flexible work environment with her present employer; her employer accommodated her schedule as a working mother with a new child. Because of downsizing, her employer could not offer her advancement in the Austin area after her return from maternity leave, but her employer did offer her an advancement opportunity in Tennessee. This position provided additional financial security for the family unit (Olivarez and her two sons), and it also provided Olivarez with additional job responsibilities and continued opportunity for advancement. The combination of factorsCthe birth of a second son, the loss of her position in Texas due to her extended maternity leave, the new position in Tennessee offering additional financial security, and the expectation of career advancement thereCconstitutes a material and substantial change since the rendition of the 1997 order.[4] Accordingly, we conclude that the district court had sufficient information on which to exercise her discretion and did not err in her application of that discretion. We overrule Echols=s first issue.

---

[4] The district court also made findings indicating that there had been a material and substantial

7

change in the life of the child and his father. Because it is sufficient to establish that a material and substantial change has occurred in Olivarez=s life, we need not address the district court=s findings with regard to the child and Echols. Those findings are:

> 6. The circumstances of . . . the child the subject of this suit, have changed since the rendition of the Divorce Decree entered April 23, 1997. The child was three and 2 when the Divorce Decree was entered and he is now 7 and 2 years of age. He has a new sibling that resides with his mother and a new sibling that resides with his father. He is better able to understand the move and better able to travel by air by himself.

> 7. The circumstances of the Respondent, Weldon Echols, Jr. have changed since the rendition of the Divorce Decree entered April 23, 1997. He has remarried and now has an additional child.

We next determine whether Olivarez=s request to modify the 1997 order to allow her to relocate outside Texas with the child would be a positive improvement for and in the best interest of the child. By his second issue, Echols contends that the district court abused her discretion because the evidence presented at trial was legally and factually insufficient to support a finding that the move to Tennessee would be a positive improvement for and in the best interest of the child. Echols contends that the only evidence Olivarez presented related to *her* employment opportunity, which does not satisfy her statutory burden of establishing that the relocation would be a positive improvement for and in the best interest of the child. Echols contends that the evidence only shows that the move would be a positive improvement for and in the best interest of Olivarez. We disagree.

Initially, we address the issue of primary custody in a joint-conservatorship situation. Although Olivarez and Echols were granted joint custody, Olivarez was granted and undisputedly exercised primary custody. Echols frames the issue as whether it would be a positive improvement for and in the best interest of the child to move with his mother to Tennessee. Said another way, the issue before this Court is whether, after the district court has granted his mother primary custody, and after living with his mother in that capacity for five years, it would be a positive improvement for and in the best interest of the child to either force Olivarez to relinquish primary custody to Echols in order to accept her job opportunity or force her to forego the job opportunity and remain in Texas, against her will, in order to retain primary custody of the child.[5] Texas case law in this area is sparse.[6] Recently, however, the Texas Supreme Court has

_____

[5] We note that Echols would not be under the same constraints. If he were to choose to move outside Texas, Olivarez would have no standing to file suit to enjoin him from leaving Texas to ensure

provided some direction in this area. *See Lenz v. Lenz*, 45 Tex. Sup. J. 781; 2002 Tex. LEXIS 75, at

*10-18 (June 6, 2002). Although the *Lenz* court conducted a legal sufficiency review to determine whether

the evidence supported a jury verdict, its favorable review of the jurisprudence of other states that have

outlined less restrictive standards in the relocation context informs our decision in this case. 45 Tex. Sup. J

at 785; 2002 Tex. LEXIS 75 at *17-18.

---

contact with his son, even if that would be in the child=s best interest.

[6]    Echols directs our attention to two cases in support of his argument that relocation would not be a positive improvement for and in the best interest of the child. First, he cites *Villasenor v. Villensor*, 911 S.W.2d 411 (Tex. App.CSan Antonio 1995, no writ), in which the appellate court held that a trial court did not abuse its discretion in *refusing* to allow a parent to relocate with a child. That case is distinguishable. In this case, we are determining whether the district court abused her discretion in *permitting* the relocation. Next, he cites *Lenz v. Lenz*, 40 S.W.3d 111 (Tex. AppCSan Antonio 2000); however, that opinion was recently reversed by the supreme court and no longer supports his argument. *Lenz v. Lenz*, 45 Tex. Sup. J. 781; 2002 Tex. LEXIS 75 (June 6, 2002).

The right of a parent to unilaterally change the primary, post-divorce residence of a child has spawned a significant amount of litigation in family courts across the country in recent years. *See* Edwin J. (Ted) Terry, *Relocation: Moving Forward or Moving Backward?*, Tex. Tech L. Rev. 983, 984 (2000). ACourts that traditionally have taken a very restrictive view of relocation have recently retreated from their previously entrenched positions against allowing a primary custodian to move to another location with his or her children.@ *Id*. at 986. Many states have an articulated policy in favor of frequent and continuous contact between the child and both parents after the dissolution of the family of origin. *Id.* at 993. Texas is among those states. *See* Tex. Fam. Code Ann. '' 153.001, .251 (West 1996 & Supp. 2002).[7] However, in the context of relocation cases, slavish adherence to such policy ignores the realities of a family that has been dissolved. After the dissolution of the family, each parent must establish a separate life. And in today=s society, it is unrealistic to expect that any family, whether intact or not, will remain in one geographic location for an extended period of time. *See* Terry, *supra*, at 1012. AThe high incidence of divorce,

---

[7] Section 153.001 provides, in pertinent part:

    (a)  The public policy of this state is to:

        (1)  assure that children will have frequent and continuing contact with parents who have shown the ability to act in the best interest of the child . . . .

Tex. Fam. Code Ann. 153.001 (West Supp. 2002).

    Section 153.251 provides:
    (b)  It is the policy of this state to encourage frequent contact between a child and each parent for periods of possession that optimize the development of a close and continuing relationship between each parent and child.

Tex. Fam. Code Ann. 153.251 (West 1996).

remarriage, second divorce, unpredictability of the employment market, and competing economic factors are all forces that affect the lives of many families and render the possibility of relocation a condition to be faced by most.@ *Id.* In fact, there is Aan emerging trend of recognition by social scientists that the divorced family is a fundamentally different unit than the marital family and that a child=s circumstances may actually be improved by a relocation when other positive factors are present.@ *Id.* at 988-89.

The district court found that A[i]t is in the best interest of the child that Susanna Olivarez shall have the exclusive right to establish the primary residence of the child, without geographical restriction@ and concluded that A[t]he requested modification is in the best interest of the child.@ At the request of Echols, the district court made the additional finding that A[i]t will be a positive improvement for the child to move away from his father in Austin, Texas, to relocate with his mother in Tennessee.@ Echols contends that Olivarez did not present legally and factually sufficient evidence to support these findings. The evidence presented at trial demonstrated that Olivarez=s employer significantly valued her work and was understanding and accepting of Olivarez=s attempts to balance work and family life. The employer was not in a position to offer Olivarez the type of advancement opportunities in Austin that were available in Tennessee, and that this was a significant opportunity that would not be available again soon. Further, the evidence demonstrated that the child would be a direct beneficiary of his mother=s promotion, both in terms of the financial benefits and in the well-being of his primary caretaker, his mother. There was evidence that Olivarez would be better able to care for the child in her new position because it offered her additional flexibility along with her employer=s acceptance of her work ethic regarding work and family life. Furthermore, the evidence did not demonstrate that Olivarez had a vindictive motive in moving her child

**12**

from Texas.[8] Her intent was to continue to foster and encourage the child=s relationship with his father by giving Echols increased amounts of visitation, reducing her own summer visitation, and paying a majority of the costs incurred in transporting the child to visit his father. And evidence was presented that the alternate visitation she offered in lieu of the former visitation would provide an adequate basis for preserving and fostering Echols=s relationship with the child.

Echols contends that, at best, this evidence established that the move would be a positive improvement for and in the best interest of Olivarez. We disagree. As previously stated, Olivarez presented evidence that the child would directly benefit from the move to Tennessee. Recently, the Texas Supreme Court has acknowledged the concept of the child=s best interest in the context of the custodial parent=s happiness. *See Lenz*, 45 Tex. Sup. J. at 785; 2002 Tex. LEXIS 75, at *17-18. Furthermore, several courts in other jurisdictions have addressed this concept. Although not dispositive, we find these discussions instructive and persuasive. *See Baures v. Lewis*, 770 A.2d 214, 223 (N.J. 1999) (AThat the interests of the child are closely interwoven with those of the custodial parent is consistent with psychological studies of children of divorced or separated parents. . . . Since that time, social science research has uniformly confirmed the simple principle that, in general, what is good for the custodial parent is

---

[8] This is a factor considered important by many courts in other jurisdictions in determining whether to permit relocation. *See Stout v. Stout*, 560 N.W.2d 903, 909 (N.D. 1997) (citing case law in 15 other states indicating that this factor is considered important in making determination).

good for the child.@); *Stout v. Stout*, 560 N.W.2d 903, 915 (N.D. 1997) (AThis court considers the child=s best interests inextricably interwoven with the quality of life of the custodial parent, with whom the child lives and upon whom the child relies emotionally.@); *Aaby v. Strange*, 924 S.W.2d 623, 629 (Tenn. 1996) (Court emphasized that Athe interest of the custodial parent and the interests of the child are basically interrelated, even if they are not always precisely the same.@); *Staab v. Hurst*, 868 S.W.2d 517, 519 (Ark. Ct. App. 1994) (AAfter a divorce and an initial custody determination, the determination of the child=s best interests cannot be made in a vacuum, but requires that the interests of the custodial parent also be taken into account.@); *Long v. Long*, 381 N.W.2d 350, 355 (Wis. 1986) (In deciding whether to permit removal, courts may not Aignore[] the impact of the custodial mother=s well-being on the children and refuse[] to consider alternative visitation arrangements.@); *Cooper v. Cooper*, 491 A.2d 606, 612 (N.J. 1984) (ABecause the best interests of a child are so interwoven with the well-being of the custodial parent, the determination of the child=s best interest requires that the interest of the custodial parent be taken into account.@); *Henry v. Henry*, 326 N.W.2d 497, 499 (Mich. Ct. App. 1982) (Court stated test for relocation is best interests of new family unit; Aarbitrary imposition of the >best interests of the child= test in all matters concerning children is illogical at best and cruelly insensitive at worst.@); *In re Marriage of Ditto*, 628 P.2d 777, 779 (Or. 1981) (AIn many cases, the happiness and well-being of the custodial parent becomes an ingredient of the welfare of the children.@); *Arquilla v. Arquilla*, 407 N.E.2d 948, 950 (Ill. App. Ct. 1980) (Court stated that test is not solely to establish the best interests of the child, but Awhether the general quality of life for both *the custodial parent and the child* will be improved by removal.@); *In re Marriage of Lower*, 269 N.W.2d 822, 826 (Iowa 1978) (AWhile there is much to be said for the

**14**

maintenance of visitation rights by the noncustodial parent . . . the interests of the custodial parent and the child may be overriding.@); *D=Onofrio v. D=Onofrio*, 365 A.2d 27, 30 (N.J. Super. Ct. Ch. Div. 1976) (In considering whether to allow relocation that would require substantial revision of father=s visitation schedule, court stated, A[i]t is in the context of what is best for that family unit [the children and the custodial parent] that the precise nature and terms of visitation and changes in visitation by the noncustodial parent must be considered.@).

The district court made the following findings of fact:

9. The opportunity facing Susanna Olivarez is a unique opportunity that has arisen as a result of her hard work and continued education and that the child will thrive as a result of this opportunity.

10. There is a realistic opportunity for possession and visitation in lieu of the current scheme for the child to continue the relationship with the non-custodial parent.

As indicated previously, the evidence demonstrated that the child will be a direct beneficiary of his mother=s promotion and that she will continue to place him as a priority in her life. In fact, she will be better able to care for him. Furthermore, although his visitation with his father will not be as frequent, the visits will be longer in duration, which could potentially increase the quality of time the child shares with his father and his father=s family. *See D=Onofrio*, 365 A.2d at 30. A child=s best interest cannot be determined in a vacuum. Although consideration of the visitation rights of the noncustodial parent is important, we must primarily concentrate on the general quality of life for both the child and the custodial parent in assessing whether a change is positive and in the child=s best interest. Based on the facts of this case, we conclude that the evidence presented is legally and factually sufficient to establish that the relocation of the child to Tennessee

**15**

would be a positive improvement for and in the best interest of the child. Accordingly, we conclude that the district court had sufficient evidence on which to exercise her discretion and did so appropriately. We overrule Echols=s second issue.

## CONCLUSION

We affirm the district court=s order.

_____

Lee Yeakel, Justice

Before Justices Kidd, Yeakel and Patterson

Affirmed

Filed: August 30, 2002

Publish