# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-12-00037-CV

---

**Pecos Downey, Appellant**

**v.**

**Danielle Downey, Appellee**

---

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT
### NO. D-1-FM-08-004567, HONORABLE GUS J. STRAUSS, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

Appellant Pecos Downey appeals an order modifying the parent-child relationship. He asserts the trial court abused its discretion in imposing a geographical restriction on his right to determine the children's primary place of residence; failing to order appellee Danielle Downey to pay him child support and ordering her to pay childcare expenses in an amount less than the statutory guidelines recommend; and changing its oral pronouncement when entering its final, written order without providing him an opportunity to be heard. For the reasons that follow, we affirm the trial court's order.

## BACKGROUND

The parties were divorced on December 5, 2008. In the final agreed divorce decree,[1] they were named joint managing conservators of their two minor children, ages three and one at the time, and Pecos was given the exclusive right to determine the children's primary residence without regard to geographic location and the exclusive right to make decisions concerning the children's education.[2] Neither party was ordered to pay child support. In January 2010, Danielle filed a petition to modify the parent-child relationship, seeking child support and to modify certain aspects of the conservatorship. Pecos filed a counter-petition in October 2010, also seeking child support. An associate judge conducted a hearing on the parties' petitions on May 9, 2011, wherein both parties waived their rights to a de novo hearing before the referring court.

Pecos, Danielle, the children's maternal grandmother and step-grandfather, and Pecos's brother testified at the hearing. One of the contentious issues was whether Pecos, as joint managing conservator with the exclusive right to determine the children's primary residence, should be permitted to relocate his place of residence to San Marcos, Texas, about 30 minutes' drive from the children's home, elementary school, day care, and the homes of their mother and maternal grandparents. Pecos intended to relocate to make his commute to classes at Texas State University more convenient and affordable. He also testified that there were exemplary schools the children

---

[1] Pecos was represented by counsel in the original divorce proceedings; Danielle was not.

[2] *See* Tex. Fam. Code § 153.154(b)(1), (2); *Yasin v. Yasin*, No. 03-10-00774-CV, 2011 Tex. App. LEXIS 8411, at *7–8 (Tex. App.—Austin Oct. 21, 2011, no pet.) (mem. op.) (explaining that "[o]nce a trial court appoints joint managing conservators and designates the parent who has the exclusive right to determine the primary residence of the child, it then has the discretion to either establish a geographic area in which the child may reside or specify that there are no geographic restrictions").

2

would be able to attend as a result of the move and affordable childcare through the university. At the time, one of the parties' children attended kindergarten in the public elementary school in Sunset Valley, a south Austin neighborhood, and the other attended a day-care center around the corner from the school.

Another contentious issue was whether Danielle should pay Pecos child support. Pecos presented evidence of the parties' oral agreement, allegedly dating back to the time of the divorce decree, wherein Danielle and/or her mother agreed to pay for the children's childcare expenses.[3] Presenting evidence that those expenses were not paid for several weeks and of his payment of the delinquent bill in the amount of $670, Pecos sought an order requiring Danielle to pay him $433 per month in child support. After the close of evidence, the associate judge orally ordered Danielle to pay monthly child support to Pecos in the amount of $400, noting that although the guidelines recommended payment of $433.90, he was also ordering her to maintain the children's health insurance, and accordingly child support in the amount of $400 was appropriate. The judge also denied Pecos's request to relocate to San Marcos, declaring that such relocation would deprive Danielle of "regular and meaningful access to the children." The day after the hearing, the associate judge issued a letter to the parties stating that "upon further review of yesterday's hearing," he had found "no material change in circumstances from the parties' Agreed Divorce Decree," and was

---

[3] Pecos testified: "The agreement [at the time of the decree] was that [Danielle] would pay for child care. Well, actually, I'm sorry, her mother pays for child care, because of us using Apple Tree. That was the whole reason we started at Apple Tree. . . . [Danielle's] mother offered to pay for the day care as long as we moved them to Apple Tree."

therefore ordering no child support to Pecos.  However, in the same letter he ordered Danielle to pay the cost of the children's monthly day-care and after-school expenses up to $250.

After another hearing on a motion to enter on July 8, 2011, the trial court signed the order modifying the parent-child relationship.  The order maintained Pecos's exclusive right to designate the primary residence of the children but added the restriction that such designation had to be "within the Sunset Valley Elementary School district until [P.D., the four-year-old] graduates from the fifth grade." In the section of the order addressing child support, the court found that no substantial change in circumstances had occurred since the rendition of the divorce decree and, therefore, denied Pecos's request for Danielle to pay child support.  However, Danielle was ordered to maintain health insurance for the children and was responsible for the premiums, and she was ordered to pay the cost of the children's monthly day-care and after-school expenses up to $250. Pecos was ordered to pay for childcare expenses exceeding $250.

Pecos filed a motion for new trial, which was overruled by operation of law.  This appealed followed.

**ANALYSIS**

Pecos raises five issues on appeal.  He argues that (1) the trial court abused its discretion in imposing the geographical limitation on his right to designate the children's primary residence; (2) there was legally and factually insufficient evidence to support the court's finding that his relocation would deprive Danielle of regular and meaningful access to the children; (3) the trial court abused its discretion by not ordering Danielle to pay him child support because there had been a material and substantial change in the parties' circumstances; (4) the trial court abused its

4

discretion in ordering Danielle to pay only $250 in childcare expenses, as that amount deviated from the guidelines; and (5) the trial court abused its discretion by changing its oral pronouncement without giving Pecos an opportunity to be heard.[4]

**Standard of Review**

We review the trial court's decisions to modify conservatorship and order or modify child support for an abuse of discretion. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (child support); *In re J.R.D.*, 169 S.W.3d 740, 742-43 (Tex. App.—Austin 2005, pet. denied) (conservatorship, possession, and child support). A trial court abuses its discretion when its decision is arbitrary, unreasonable, and without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985); *Echols v. Olivarez*, 85 S.W.3d 475, 477 (Tex. App.—Austin 2002, no pet.). An abuse of discretion does not occur as long as some evidence of a probative nature exists to support the trial court's decision. *Echols*, 85 S.W.3d at 477.

Under an abuse of discretion standard, legal and factual sufficiency challenges to the evidence are not independent grounds of error, but are relevant factors in assessing whether the trial court abused its discretion. *Zeifman v. Michels*, 212 S.W.3d 582, 587-88 (Tex. App.—Austin 2006, no pet.). In the context of modification suits, the traditional sufficiency standards of review overlap the abuse of discretion standard, and appellate courts apply a hybrid analysis. *Id.* Once it has been determined that the abuse of discretion standard applies, an appellate court engages in a two-pronged

---

[4] The order also modified and reallocated some of the rights of the custodial parents, but Pecos does not challenge these or any other provisions of the order.

inquiry: (1) whether the trial court had sufficient information on which to exercise its discretion; and (2) whether the trial court erred in its application of that discretion. *Echols*, 85 S.W.3d at 477-78. The first inquiry involves traditional legal and factual sufficiency reviews. *Id.* The second inquiry requires the appellate court to determine whether, based on the elicited evidence, the trial court made a decision that was not arbitrary or unreasonable. *Id.* at 478.

When, as here, the trial court did not issue any findings of fact or conclusions of law, all facts necessary to support its ruling and supported by the evidence are implied in favor of the trial court's decision, and we will affirm its judgment on any legal theory supported by the evidence. *Worford*, 801 S.W.2d at 109; *Zeifman*, 212 S.W.3d at 588. We are mindful that the trial judge is "best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal." *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.). The fact finder is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005). When the appellate record includes both the reporter's record and the clerk's record, as it does here, the implied findings are not conclusive and may be challenged for legal and factual sufficiency. *Zeifman*, 212 S.W.3d at 588.

**Modification of conservatorship**

In his first two issues, Pecos argues that the trial court abused its discretion by imposing a geographical restriction on his choice of primary residence for the children. We address each issue in turn.

*Material or Substantial Change*

In his first issue, Pecos argues that "there was no evidence to support the trial court's finding that a material or substantial change had occurred or that the current order was unworkable." A trial court may modify a conservatorship order if the modification would be in the child's best interest and "the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed" since the time of the rendition of the divorce decree. Tex. Fam. Code § 156.101(a)(1)(A). The party seeking modification has the burden to establish these elements by a preponderance of the evidence. *Zeifman*, 212 S.W.3d at 589. Although a court's determination as to whether a material and substantial change of circumstances has occurred is not guided by rigid rules and is fact-specific, *see id.* at 593, examples of material changes found by courts include the marriage of one of the parents and a change in home surroundings. *In re A.L.E.*, 279 S.W.3d at 428-29.

We must infer then that the trial court made a finding of at least one specific material and substantial change. *See Worford*, 801 S.W.2d at 109; *Zeifman*, 212 S.W.3d at 588. The issue then is whether the trial court had sufficient information to make this determination. *See Echols*, 85 S.W.3d at 477-78. We conclude that it did. *See In re P.M.G.*, 405 S.W.3d 406, 413 (Tex. App.—Texarkana 2013, no pet.) (concluding on facts presented that trial court did not abuse its discretion in impliedly finding material and substantial change since entry of divorce decree to support geographic residency restriction); *see also In re C.R.J.*, No. 06-13-00053-CV, 2014 Tex. App. LEXIS 568, at *18-21 (Tex. App.—Texarkana Jan. 17, 2014, no pet. h.) (mem. op.) (affirming trial court's judgment imposing geographical restriction and concluding that trial court did not abuse

7

discretion by finding material and substantial change in circumstances since entry of previous custody order).

In his briefing, Pecos concedes two material and substantial changes since the decree was rendered: his "plan to marry" and "return to school at Texas State University." *See In re A.L.E.*, 279 S.W.3d at 428-29 (including marriage as example of material change sufficient to support modification of conservatorship order). The evidence also established that, after the decree was rendered, his girlfriend began living with him, he quit his job to go back to school, his older child started kindergarten, and both Pecos and Danielle moved their residences. *See id.* (including change of home surroundings as example of material change sufficient to support modification of conservatorship order). It was undisputed that, after the decree was rendered, Pecos and the children moved into a home in Sunset Valley, where the children began attending day care (at Apple Tree Learning Center), and J.D. later started kindergarten at Sunset Valley Elementary School. The evidence also showed that, at the time of the hearing, the children were doing well and had developed friendships with schoolmates and neighborhood children. *See Child v. Leverton*, 210 S.W.3d 694, 698 (Tex. App.—Eastland 2006, no pet.) (considering current stability of children as evidence of whether there has been material and substantial change in circumstances as well as in best-interest determination where party was seeking to modify conservatorship so that children could *stay* in same general geographic location). On this record, we conclude that the trial court had sufficient information and did not abuse its discretion in impliedly finding a material and substantial change since the entry of the divorce decree. We overrule Pecos's first issue.

*Best Interest*

In his second issue, Pecos argues that the "evidence was legally and factually insufficient to support [the trial court's] finding that the relocation would deprive [Danielle] of regular and meaningful access to the children." The trial court orally stated at the hearing that relocation would deprive Danielle of regular and meaningful access to the children, but this finding was not included in the order modifying the parent-child relationship. *See* Tex. R. Civ. Proc. 296 (providing procedure for party to request findings of fact and conclusions of law after judgment is signed). But even if we imply that the trial court made this finding, whether a non-custodial parent will be deprived of regular and meaningful access is but one of several factors that courts balance in the fact-driven determination of whether a geographic restriction is in the best interest of the children. *See* Tex. Fam. Code § 156.101(a); *Lenz v. Lenz*, 79 S.W.3d 10, 15-16 (Tex. 2002) (listing variety of factors relevant to determination of whether geographic restriction is in best interest of child).

As we previously stated, because the trial court did not issue any findings of fact or conclusions of law, all facts necessary to support its ruling and supported by the evidence are implied in favor of its decision, and we will affirm its judgment on any legal theory supported by the evidence. *Worford*, 801 S.W.2d at 109; *Zeifman*, 212 S.W.3d at 588. We must infer then that the trial court made a finding that the geographic restriction was in the children's best interest if there is sufficient evidence to support it. We conclude that there is. The trial court was permitted to make reasonable inferences from the evidence it heard, in light of its fact-finding role of evaluating witness credibility and demeanor. *See In re A.L.E.*, 279 S.W.3d at 427. The trial court heard testimony

9

about the parties' motives in opposing or favoring the relocation and the parties' changes of residence during the time period between the decree being rendered and the hearing, and the court was permitted to consider how the children's stability would be affected by the relocation. *See Zeifman*, 212 S.W.3d at 595; *Leverton*, 210 S.W.3d at 698; *see also* Tex. Fam. Code § 153.001(a)(2) (stating public policy of state to include providing "stable" environment for children). On this record, we conclude there was sufficient evidence for the court to conclude that the geographic restriction was in the children's best interest. We overrule Pecos's second issue.

**Modification of child support**

Pecos's third and fourth issues assert that the trial court erred in failing to order Danielle to pay him child support and that the amount it ordered her to pay in childcare expenses is too low. A trial court may modify an order that provides for the support of a child if the circumstances of the child or a person affected by the order have materially and substantially changed since the earlier of the date of the order's rendition or the date of the signing of a mediated or collaborative law settlement agreement on which the order is based. Tex. Fam. Code §156.401(a)(1). Actions seeking child support where no child support was issued in the original decree or applicable prior order are considered modification actions. *See Giangrosso v. Crosley*, 840 S.W.2d 765, 768 (Tex. App.—Houston [1st Dist.] 1992, no writ); *S.A.B.S. v. H.B.*, 767 S.W.2d 860, 861-62 (Tex. App.—Corpus Christi 1989, no writ).

The party seeking modification of a child-support order has the burden of proving by a preponderance of the evidence the occurrence of "material and substantial change." *In re J.R.D.*, 169 S.W.3d 740, 742 (Tex. App.—Austin 2005, pet. denied); *In re Z.B.P.*, 109 S.W.3d 772, 781

(Tex. App.—Fort Worth 2003, no pet.). A court is not compelled to modify a child-support order even upon such showing. *See* Tex. Fam. Code §156.401(a)(1) ("the court *may* modify an order that provides for the support of a child . . ." (emphasis added)). In determining whether a modification in child support payments is appropriate, the trial court must examine the circumstances of the child and parents at the time the prior decree was entered in relation to the circumstances existing at the time the prior order is sought to be modified. *S.A.B.S.*, 767 S.W.2d at 862. The record must contain both historical and current evidence of the relevant person's financial circumstances. *Melton v. Toomey*, 350 S.W.3d 235, 238-39 (Tex. App.—San Antonio 2011, no pet.). It is left to the trial court's sound discretion to weigh all the relevant factors when deciding whether there has been a substantial and material change and whether that change warrants a modification of child support, and we will not disturb the trial court's judgment absent a clear abuse of that discretion. *See Worford*, 801 S.W.2d at 109.

As the party seeking to modify the prior order concerning child support, it was Pecos's burden to present evidence of the occurrence of "material and substantial change." *See In re J.R.D.*, 169 S.W.3d at 742. The record is mostly silent on the financial and related circumstances of the parties and children at the time of the divorce decree. Although Danielle and Pecos both worked for Spec's, a liquor store, at the time of the decree, there is no evidence of the amount of either parties' income at that time, except that neither party "was making very much money," according to Pecos. There is also no evidence about whether the children were enrolled in day care at the time of the decree or, if they were, what those expenses were. Nor does the record contain any accounting of the children's expenses at the time of the decree. As to the parties' and

11

children's financial circumstances at the time of the modification hearing, Pecos had, at some point since the decree, quit his job to attend Texas State University and was receiving $2000 per month from his brother in assistance. The evidence showed that Danielle remained employed at the time of the hearing, but there was no evidence of her income.

On this record, the trial court could have determined that it did not have enough evidence to make the required finding that there had been a substantial and material change in the parties' financial circumstances. *See In re C.C.J.*, 244 S.W.3d 911, 917-18 (Tex. App.—Dallas 2008, no pet.) (order increasing father's support obligation reversed for lack of evidence of mother's and children's expenses at time of divorce); *Cole v. Cole*, 882 S.W.2d 90, 92 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (without evidence of financial circumstances at time of divorce, court could not determine whether circumstances had changed); *S.A.B.S.*, 767 S.W.2d at 861 (same). Alternatively, the trial court could have determined, based on the evidence that Danielle remained in the same job and that Pecos was receiving monthly payments from his brother, that there had not been a substantial and material change in the parties' financial circumstances. We therefore conclude that the trial court did not abuse its discretion in not ordering Danielle to pay child support to Pecos and overrule Pecos's third issue.

Because we have already concluded that the trial court did not abuse its discretion in not ordering Danielle to pay child support, we likewise conclude that the trial court did not abuse

12

its discretion in imposing on her the $250 monthly childcare payments.[5]  We accordingly overrule Pecos's fourth issue on appeal.

**The trial court's plenary power**

Pecos's fifth issue contends that the trial court abused its discretion by changing its oral pronouncement about child support in a written letter and the subsequent final order without first providing him an opportunity to be heard.  At the hearing on the petitions to modify, the judge orally ordered Danielle to pay $400 per month to Pecos as child support.  The final order, however, did not include an award of child-support payments to Pecos.  Pecos asserts that he should have been given an opportunity to be heard before the court modified its oral pronouncement and that the court's failure to allow him this opportunity was an abuse of discretion.

As a threshold matter, we note that Pecos was given an opportunity to present argument prior to the trial court's signing of the order modifying the parent-child relationship.  The trial court held a hearing on the motion to enter the order, and both sides were allowed to present argument.  Further, Pecos fails to cite authority and we have found none that would support his argument that a trial court must give the parties notice and an opportunity to respond in this type of situation.  Until thirty days after a judgment is signed, the trial court has plenary power to vacate, modify, correct, or reform its judgment before it becomes final.  Tex. R. Civ. P. 329b(d); *see*

---

[5]  Even if we assume without deciding that the monthly $250 childcare payments are "child support," Danielle does not appeal the trial court's order.  *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 577 (Tex. 2006) (except for fundamental error, appellate courts are not authorized to consider issues not properly raised by parties).

13

Tex. R. Civ. P. 306a (time periods run from date judgment is signed). "During this period, the trial court's power to modify its judgment is virtually absolute." *Stallworth v. Stallworth*, 201 S.W.3d 338, 349 (Tex. App.—Dallas 2006, no pet.). Thus, we overrule his fifth issue.

## CONCLUSION

For these reasons, we affirm the trial court's Order Modifying the Parent-Child Relationship.

_____

Melissa Goodwin, Justice

Before Chief Justice Jones, Justices Rose and Goodwin

Affirmed

Filed:  April 1, 2014

14