# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-23-00801-CV

---

**Kelly Stone, Appellant**

**v.**

**Hayden Stone, Appellee**

---

### FROM THE 453RD DISTRICT COURT OF HAYS COUNTY
### NO. 11-0363, THE HONORABLE SHERRI TIBBE, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Kelly Stone appeals the trial court's modification of custody of her two children. Under the final divorce decree, Kelly and the children's father, appellee Hayden Stone, were appointed joint managing conservators.[1] Kelly was appointed the joint managing conservator with the exclusive right to designate the children's primary residence within Hays County, Texas, and any counties contiguous to it. Hayden was granted possession and access under the standard possession order. *See* Tex. Fam. Code §§ 153.111-.317.

After Kelly was accepted to a PhD program in Portugal, she filed a motion for enforcement and modification, seeking to enforce the passport provision in the decree and to remove the geographic restriction. Hayden filed a counterpetition seeking to be named sole managing conservator; in the alternative, seeking to be appointed the joint managing conservator with the exclusive right to designate the children's primary residence; and under either type of

---

[1] Because the parties share the same last name, we refer to them by their first names.

conservatorship, seeking to have Kelly's possession and access supervised. After a hearing and after the trial court met with the children, who were ages 14 and 16 at the time, the trial court signed an order naming the parties joint managing conservators and awarding Hayden the exclusive right to designate the children's primary residence within Hays County; all counties contiguous to Hays County; and Nixon, Texas.

The order makes no provision for Kelly to have any scheduled possession and access to the children. Instead, the trial court left the time for possession and access to be agreed by the parties, and it prohibited Kelly and Hayden from filing contempt charges against each other for failing to follow "the Court-ordered possession order, if the children do not wish to spend time with the other parent for a period of possession."

Because we conclude that the trial court abused its discretion by imposing a more severe restriction on Kelly's possession and access of the children than required to protect the children's best interest, we reverse and remand with instructions to the trial court to devise a custody order that provides specific times and conditions for Kelly to have possession and access.

## BACKGROUND

According to Kelly's brief and corroborated by the appellate record, the trial court signed the final decree of divorce on January 20, 2012.[2] On July 27, 2022, when the children were 13 and 14, Kelly filed a motion for enforcement and modification. In the motion, Kelly requested that the trial court enforce the passport provision in the final divorce decree, alleging

---

[2] When, as here, an appellee does not file a brief, the appellate court may accept any factual statement made in the appellant's brief and supported by the record as true. *See* Tex. R. App. P. 38.1(g) ("In a civil case, the court will accept as true the facts stated [in the appellant's brief] unless another party contradicts them. The statement must be supported by record references.").

that she had attempted to get Hayden's consent for issuance of passports for the children and that Hayden had refused to provide consent or good cause for withholding that consent.

The passport provision ordered, among other things, that "if a parent's consent is required for the issuance of a passport, that parent shall provide that consent in writing no later than ten days after receipt of the consent documents, unless the parent has good cause for withholding that consent." The divorce decree also established the following: (1) "either parent shall have the right to maintain possession of any passports of the children, . . . subject to the requirements for delivery of the passports and all other requirements set forth below"; (2) "[e]ither parent is ordered to deliver or cause to be delivered to the other parent" the children's passports within ten days of receipt of the other parent's notice of intent to have the children travel outside the United States during the other parent's period of possession; (3) specific requirements for the type of written notice that a conservator is required to provide to the other conservator of intent for the children to travel outside the United States during the conservator's period of possession; (4) the conservator must furnish this written notice "no less than twenty-one days before the intended day of departure of the children from the United States"; (5) each conservator is "ordered to properly execute the written consent form (attached [to the decree]) and any other form required . . . and, within ten days of that conservator's receipt of the consent form, to deliver the form to the conservator providing the written notice"; and (6) "any conservator who violates the terms and conditions of these provisions regarding the children's passports shall be liable for all costs incurred due to that person's noncompliance with these provisions," including attorneys' fees, among other costs.

Kelly sought to hold Hayden in contempt and to recover attorneys' fees for filing the motion to enforce. Kelly moved to modify the final divorce decree's geographic restriction

3

by removing it, alleging that the circumstances of a conservator had materially and substantially changed. She requested that the trial court make orders for the conservatorship of the children if the parties could not reach a written agreement on provisions modifying the possession of, access to, and support of the children.

On August 10, 2022, Hayden filed an answer to the enforcement motion. In his answer, he alleged that the order sought to be enforced was ambiguous and not clear and specific enough for him to know what duties or obligations are required. He further alleged that Kelly filed the motion in bad faith because she was attempting to remove the children from the United States to relocate to Portugal.[3]

Kelly then moved for temporary orders on August 17, 2022. Kelly explained that she had been accepted to a PhD program in Portugal and that despite her "best efforts at amicably resolving this matter before filing suit, the parties have been unable to come to agreement on passport provisions or a temporary schedule regarding possession and access of their two children." Kelly requested that the trial court (1) order a temporary possession-and-access schedule for her with the children that the court finds is in their best interest while Kelly continues her education; (2) include in the order provisions for international travel and to specify exchanges of the children; (3) order reasonable periods of electronic communication between the children and Kelly to supplement Kelly's periods of possession of the children; and (4) order Hayden to provide consent for issuance of a passport for each child, to execute a written consent

---

[3] Hayden filed a certificate of conference with the trial court on August 24, 2022. The certificate of conference summarized the parties' counsel's discussion at a settlement conference and identified the issues remaining for the trial court to determine at a September 6, 2022 hearing. The certificate refers to Hayden's August 23, 2022 Counterpetition to Modify Parent-Child Relationship, Request for Temporary Restraining Order, Request for Temporary Orders and Permanent Injunction. However, this pleading is not included in the clerk's record filed in this appeal.

4

form to travel abroad, and to execute any other documents required for international travel. An associate judge orally denied Kelly's requests for a temporary possession-and-access schedule and for a method for Kelly to secure the children's passports.

In September 2022, Kelly requested a de novo hearing and that she be allowed to appear electronically because she was in Portugal for her graduate program. On October 20, 2022, the trial court conducted a de novo hearing, at which Kelly appeared electronically and her counsel appeared in person. On November 2, 2022, the trial court signed temporary orders requiring that Hayden obtain passports for the children and maintain them until further order from the court or agreement by the parties. Pursuant to a Rule 11 agreement, Kelly had possession of the children in Texas from November 8 to November 26, 2022.

On June 20, 2023, Hayden filed a second amended counterpetition to modify the divorce decree. In the counterpetition, Hayden sought appointment as the conservator with the right to designate the children's primary residence in Hays County, Gonzales County, "or a contiguous county thereto." He also sought appointment as sole managing conservator and requested that Kelly's access to or possession of the children be supervised. He requested that the trial court require Kelly to execute a bond to exercise possession and access and asked the court to determine whether there is a risk of international abduction of the children.

On July 28, 2023, the trial court conducted a final hearing. Both Kelly and Hayden appeared pro se at the bench trial. At trial, Hayden expressed his intent to move to Nixon, Texas, in Gonzales County, which is not in a county contiguous to Hays County but is approximately 50 miles from San Marcos, where the children lived at the time of trial. After the hearing, the trial court conferred with the children.

5

The trial court signed the modification order on October 26, 2023.[4]  The order grants in part Hayden's counterpetition for modification.  Both Hayden and Kelly remain joint managing conservators.  The trial court modified the provision granting the exclusive right to designate the primary residence of the children, changing the parent with that right to Hayden instead of Kelly, and the geographic restriction, changing it to allow Hayden to designate the children's primary residence within Hays County; all contiguous counties; or Nixon, Texas (located in a non-contiguous county), with a proviso ordering that "arrangements are made [for the older child] to continue attending school at Katherine Ann Porter School located at 515 FM 2325, Wimberley, Texas 78676."  In addition, the trial court modified the passport provisions, giving each parent conservator "the right, subject to the agreement of the other parent conservator, to apply for passports for the children, to renew the children's passports, and to maintain possession of the children's passports."

The trial court did not establish a possession-and-access schedule in the modification order.  Instead, the order included the following "Teenager Provision":

> HAYDEN MARSHAL STONE and KELLY ANN STONE agree that because of the children's ages, that being teenagers, the parties will work together to work out an agreement for possession and access of the child with each parent, while recognizing the children's age and extracurricular activities.[5]  HAYDEN MARSHAL STONE and KELLY ANN STONE may work directly with the child to arrange times for which they may spend time with the child; however, they will notify the other party of such.

---

[4]  The order states that it was judicially pronounced and rendered on August 21, 2023, and noted on the court's docket sheet that same date.  The trial court also issued a letter ruling to the parties on that date.

[5]  Nothing in the record reflects that Kelly agreed to this provision.  After the hearing, the trial court appointed an attorney ad litem to draft the modification order.  The modification order was not signed by either party.

HAYDEN MARSHAL STONE and KELLY ANN STONE shall in no event file for the other party to be held in Contempt of Court for failing to follow the Court-ordered possession order, if the children do not wish to spend time with the other parent for a period of possession.

At Kelly's request, the trial court issued findings of fact and conclusions of law.

The trial court issued the following relevant conclusions of law:

- "It is in the best interests of the children for the parents to remain joint managing conservators."

- "It is in the best interests of the children for the father to be named as the conservator with the exclusive right to designate the primary residence of the children."

- "The children the subject of this suit would not be at risk for international abduction by [Kelly] if periods of possession and access were exercised in Portugal by [Kelly]."

- "It is in the best interest of the children to remain in Texas."

- "It is not in the best interest of the children to move to Portugal."

- "Communication between the parties is in the best interest of the children, and communication between the parties would be best facilitated by the use of Our Family Wizard, an electronic application used for family communication."

- "It is in the best interest of the children to visit with their mother."

- "The children the subject of this suit are old enough to advocate for visitation with [Kelly] and any and all future visitation being conducted pursuant to the Teenager Clause would be in the children's best interest."[6]

This appeal followed.

---

[6] Although the trial court labeled these as conclusions of law, we are not bound by its designation, and where appropriate, we will treat them as findings of fact subject to the appropriate standard of review. *See Texas Outfitters Ltd., LLC v. Nicholson*, 572 S.W.3d 647, 653 n.7 (Tex. 2019).

7

## ANALYSIS

In a single issue, Kelly contends that the trial court abused its discretion by effectively denying her access to the children and not specifically stating in its order the periods that she is allowed possession and access and by removing her ability to enforce the order by contempt.

### Standard and scope of review

We review a trial court's modification of conservatorship or possession for an abuse of discretion. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007). "The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." *In re J.J.R.S.*, 627 S.W.3d 211, 218 (Tex. 2021) (quoting Tex. Fam. Code § 153.002). Conservatorship suits are "intensely fact driven." *Lenz v. Lenz*, 79 S.W.3d 10, 19 (Tex. 2002). For this reason, "the trial court is in the best position to 'observe the demeanor and personalities of the witnesses and can "feel" the forces, powers, and influences that cannot be discerned by merely reading the record.'" *In re J.J.R.S.*, 627 S.W.3d at 218 (quoting *Echols v. Olivarez*, 85 S.W.3d 475, 477 (Tex. App.—Austin 2002, no pet.)). The factfinder "is the sole judge of the credibility of witnesses and the weight to be given to their testimony." *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

"A trial court's determination of what is in the child's best interest," when specifying terms and conditions of conservatorship, "is a discretionary function." *In re J.J.R.S.*, 627 S.W.3d at 218. Thus, "the trial court's judgment will be reversed only when it appears from the record as a whole that the court has abused its discretion." *Id.* (citing *Gillespie v. Gillespie*,

644 S.W.2d 449, 451 (Tex. 1982)). A trial court abuses its discretion by acting "without reference to any guiding rules or principles" or arbitrarily or unreasonably. *Id.* (quoting *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam)). A trial court abuses its discretion "if it imposes restrictions that exceed those required to protect the child's best interest." *In re H.D.C.*, 474 S.W.3d 758, 764 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *see also In re J.J.R.S.*, 627 S.W.3d at 218-19.

Under an abuse-of-discretion standard, challenges to the legal and factual sufficiency of the evidence are not independent grounds of error but instead are factors used to assess whether the trial court abused its discretion. *Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex. App.—Austin 2006, pet. denied). Under this standard, an appellate court considers (1) whether the trial court had sufficient information on which to exercise its discretion and (2) whether the trial court erred in its application of discretion. *Id.* at 588. "The traditional sufficiency review comes into play with regard to the first question; however, the inquiry does not end there." *Id.* (citing *Echols*, 85 S.W.3d at 478). We then proceed "to determine whether, based on the evidence, the trial court made a reasonable decision, that is, that the court's decision was neither arbitrary nor unreasonable." *Id.* A trial court does not abuse its discretion if there is some substantive, probative evidence to support its decision. *Id.* at 587.

In this case, Hayden had the burden of proof to establish that it was in the children's best interest to modify the possession-and-access order in a way that gives him and the children control over Kelly's possession and access. Thus, Kelly must demonstrate on appeal that there is no evidence to support the trial court's adverse finding. *Id.* at 588 (citing *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983)). In determining whether there is legally sufficient evidence to support the finding under review, we examine the record for evidence and inferences

9

that support the challenged finding, while disregarding all contrary evidence and inferences. *Id.* "We must consider evidence favorable to the finding if a reasonable factfinder could, and disregard evidence contrary to the finding unless a reasonable factfinder could not." *Id.* (citing *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex. 2005)).

In determining a factual-sufficiency question, we weigh and consider all the evidence in the record. *Id.* at 588-89 (citing *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992)). When an appellant attacks the factual sufficiency of an adverse finding on an issue on which she did not have the burden of proof, as Kelly does here, she must demonstrate that "the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust." *Id.* at 589 (citing *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986)). We must not substitute our judgment for that of the factfinder. *Golden Eagle Archery*, 116 S.W.3d at 761.

**Restriction of joint managing conservator's possession and access**

A trial court may modify the provisions of a divorce decree that establish the terms and conditions of conservatorship or that provide for the possession of or access to the children, if (1) modification would be in the best interest of the child, and (2) the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed since the rendition date of the divorce decree.[7] *See* Tex. Fam. Code § 156.101(a)(1)(A). On appeal, Kelly argues that the trial court erred by placing restrictions or conditions on her possession of and access to the children that effectively deny her access or, alternatively, exceed

---

[7] Kelly does not challenge the trial court's conclusion that "there has been a material and substantial chan[g]e of circumstances since the last order."

10

what is required to protect the best interest of the children, and by removing her ability to enforce the order by contempt.

There is a rebuttable presumption that a standard possession order is in the best interest of a child and provides reasonable minimum possession of a child for a parent named as a joint managing conservator. *Id.* § 153.252. "When determining whether to deviate from the standard possession order, a court may consider '(1) the age, developmental status, circumstances, needs, and best interest of the child; (2) the circumstances of the managing conservator and of the parent named as a possessory conservator; and (3) any other relevant factor.'" *In re J.J.R.S.*, 627 S.W.3d at 218 (quoting Tex. Fam. Code § 153.256); *see also Gopalan v. Marsh*, 706 S.W.3d 650, 668 (Tex. App.—Austin 2025, pet. filed) (applying Section 153.256 factors to joint managing conservator's possession). However, an order that deviates from the standard possession order by "den[ying] possession of a child to a parent or impos[ing] restrictions or limitations on a parent's right to possession of or access to a child may not exceed those [terms] that are required to protect the best interest of the child." Tex. Fam. Code § 153.193. In addition, the court must "specify and expressly state in the order the times and conditions for possession of or access to the child, *unless a party shows good cause why specific orders would not be in the best interest of the child.*" *Id.* § 153.006(c) (emphasis added).[8]

The nonspecific orders allowed by Section 153.006(c) "can vary, based on the needs of the case, as to the level of specificity provided by the trial court and the amount of discretion left to the parties." *In re J.J.R.S.*, 627 S.W.3d at 219 (explaining that "[t]he type of

---

[8] We note that Sections 153.256, 153.193, and 153.006 expressly apply to possessory conservators. Because Section 153.252 extends to joint managing conservators the rebuttable presumption that the standard possession order provides reasonable minimum possession of a child, we conclude that these three related statutory provisions also apply to joint managing conservators.

nonspecific order at issue in this case—an 'as agreed' visitation order [leaving possessory conservator's visitation to managing conservators' complete discretion and requiring their agreement]—falls on the opposite end of the spectrum from the standard possession order"). The possession-and-access provision at issue here (termed the "Teenager Provision" by the trial court), similarly to the "as agreed" order considered by the court in *In re J.J.R.S.*, is on the opposite end of the spectrum from the standard possession order. The Teenager Provision provides that "because of the children's ages, that being teenagers, the parties will work together to work out an agreement for possession and access of the child with each parent," and it forbids each parent from moving to have the other parent held in contempt of court "for failing to follow the Court-ordered possession order, if the children do not wish to spend time with the other parent for a period of possession." In the absence of any scheduled visitation for Kelly, the order's nonspecific Teenager Provision leaves visitation ultimately to the discretion of both Hayden, who determines the children's primary residence, and the children themselves, and requires their agreement to Kelly's possession and access.

In *In re J.J.R.S.*, the Texas Supreme Court held that the "as agreed" order allowing visitation solely at the discretion of the managing conservators was not a total denial of access, but it also made clear that a "severe" restriction on a parent's access is only justified in limited circumstances. *Id.* at 220 ("Thus, *in rare cases*, a severe restriction or limitation is permissible if it is in the best interest of the child." (emphasis added)). The court determined that the "as agreed" visitation order at issue did not amount to a denial of access. *Id.* (construing terms "deny," "restriction," and "limitation" as used in Section 153.193). Instead, that visitation order constituted a restriction and limitation on the mother's access to her children because she was restricted and limited to supervised visitation at the managing conservators' discretion. *Id.*

12

The court explained that "[t]he restriction is undoubtedly a severe one, permissible only if necessary to protect the children's best interest, but it is not an outright denial that forecloses all access." *Id.*

The factual circumstances that courts have found to constitute legally sufficient evidence supporting a "severe" restriction on a parent's access drastically differ from the circumstances present here. For example, in *In re A.N.*, No. 10-16-00394-CV, 2017 WL 4080100, at *7 (Tex. App.—Waco Sept. 13, 2017, no pet.) (mem. op.), evidence of the mother's long-term history of drug use (including methamphetamine and opioid abuse), untreated mental-health issues, violent and abusive relationships, and history with the Department of Family and Protective Services supported the trial court's nonspecific visitation order allowing supervised visitation at the discretion of the child's caregivers. 2017 WL 4080100, at *4-5, 7-8 (mother's rights to one child were terminated based on endangerment and neglect but she was named possessory conservator of other child). In *In re J.J.R.S.*, the incident leading to the children's removal involved their mother "soliciting [sexual services] with an armed boyfriend while her children waited in another motel room," and there was evidence at the scene of drug paraphernalia that could have been accessible to children, among other serious issues, including the children's absence from school for nearly two years. 627 S.W.3d at 221. Accordingly, the Texas Supreme Court held "that Texas Family Code sections 153.006(c) and 153.193, read in conjunction, permit the kind of 'as agreed' order at issue in this case *in the narrow circumstance* where such a severe restriction is necessary to protect the child's best interest."[9] *Id.* (emphasis added).

---

[9] We note that in both these cases the parent subject to the nonspecific order was a possessory conservator, unlike here, where Kelly remains a joint managing conservator.

13

In contrast, here, Hayden presented no evidence that supports the type of physical or emotional endangerment that courts have concluded supports a severe restriction on a conservator's possession and access. *See, e.g.*, *In re P.A. C*, 498 S.W.3d 210, 219 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (holding trial court could have concluded restrictions on joint managing conservator's possession periods and requirement of supervised possession "were in the children's best interest based on (1) [mother's] uncertain mental health state; (2) concern that [mother] would not follow the court's orders to the detriment of the children; or (3) concern that [mother] might damage the children emotionally by demeaning their father when they were alone in her custody"). We note that the trial court conferred with the children before signing the modification order and expressed in its letter ruling that both children had "expressed their desires to the court for visitation with [Kelly]." To the extent that the trial court sought to take the children's desires into account in its best-interest analysis by preventing Kelly from moving for contempt against Hayden "if the children do not wish to spend time" with her for a period of possession, "no legal authority . . . [supports taking] consideration of a child's desires to the extreme of granting that child—no matter how mature—complete discretion over possession by a parent." *In re S.V.*, 599 S.W.3d 25, 37 (Tex. App.—Dallas 2017, pet. denied) (concluding that trial court abused discretion by placing father's very limited access entirely within children's control after father had been verbally and physically abusive to older child). We hold that the trial court's findings of fact and conclusions of law, as well as the evidence supporting them, do not support a conclusion that this is the type of "narrow circumstance" where the severe restriction of an "as agreed" order is necessary to protect the children's best interest. *See In re J.J.R.S.*, 627 S.W.3d at 221. Therefore, we hold that the trial court abused its discretion by entering such an order here.

14

Furthermore, under Section 153.006(c), the trial court must "specify and expressly state in the order the times and conditions for possession of or access to the child, *unless a party shows good cause why specific orders would not be in the best interest of the child*." Tex. Fam. Code § 153.006(c) (emphasis added). Hayden offered no evidence to show good cause that specific times and conditions for possession and access would not be in the children's best interests. *See In re A.P.S.*, 54 S.W.3d 493, 498 (Tex. App.—Texarkana 2001, no pet.). In addition, the trial court made a finding of fact and a conclusion of law describing the parties' past difficulties in communication, which are corroborated by evidence in the record; the trial court also admonished Hayden on the record that he needs "to start cooperating and sending [Kelly] information and responding to her emails." The trial court found that Hayden "has failed to adequately respond to communications with [Kelly] via email." We conclude that the parties' past communication and coparenting difficulties require specific orders from the trial court to ensure Kelly's possession and access. We hold that in the absence of any evidence showing good cause for why specific orders are inappropriate, "the trial court is required to fashion an order that specifically articulates the times and conditions of" Kelly's access to the children. *Id.*; *see also In re J.J.R.S.*, 627 S.W.3d at 224 (noting that lack of specificity may be erroneous in various situations, including when showing of good cause was lacking and when facts of case "did not rise to the level of an extreme circumstance" justifying severe restriction of access).

"Even when the trial court is justified in deviating from the standard possession order, the trial court must maintain the power to enforce its judgment." *In re Marriage of Collier*, 419 S.W.3d 390, 398 (Tex. App.—Amarillo 2011, no pet.). To maintain this power, the order must be specific enough to be enforceable by contempt. *Id.* Even when restrictions are in the children's best interest, the court must specifically define those terms in its order. *Id.*; *In re*

15

*A.P.S.*, 54 S.W.3d at 499; *see also* Tex. Fam. Code § 157.421 (allowing trial court to clarify order if court finds on its own or party's motion "that the order is not specific enough to be enforced by contempt" by rendering an order that is specific enough to be enforced by contempt). The order "must state in clear and unambiguous terms what the parties must do to comply with the possession order in a manner that is specific enough to allow an aggrieved party to obtain enforcement of the judgment by contempt." *In re Marriage of Collier*, 419 S.W.3d at 398; *In re A.P.S.*, 54 S.W.3d at 499. Therefore, we hold that the trial court abused its discretion by issuing the vague Teenager Provision that is unenforceable by contempt.

We sustain Kelly's sole issue.

### CONCLUSION

Having held that the trial court abused its discretion by rendering an "as agreed" possession order that restricted Kelly's access more severely than necessary to protect the children's best interest and that is unenforceable by contempt, we reverse the provisions of the trial court's order concerning possession and access, and we remand the case to the trial court for it to render an order that specifically articulates the times and conditions of Kelly's possession of and access to the children and is enforceable by contempt.

_____

Gisela D. Triana, Justice

Before Chief Justice Byrne, Justices Triana and Kelly

Reversed in Part and Remanded

Filed:   April 18, 2025

16