# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-05-00030-CV

---

**Debra Jean Avila, Appellant**

**v.**

**Alfredo Miguel Avila, Appellee**

---

**FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 119TH JUDICIAL DISTRICT**
**NO. B-04-0029-F, HONORABLE RAE LEIFESTE, JUDGE PRESIDING**

---

### M E M O R A N D U M   O P I N I O N

In a divorce proceeding, the district court appointed appellee Alfredo Miguel Avila ("Mike") joint managing conservator of his children with the exclusive right to designate their primary residence. In her sole issue on appeal, appellant Debra Jean Avila ("Debbie"), the children's mother, asserts that the district court erred in appointing Mike the primary custodian of the children. We will affirm.

### BACKGROUND

Mike filed for divorce from Debbie on January 7, 2004. On August 31, 2004, the district court held a hearing to determine conservatorship of their three children.

We briefly summarize the evidence before the district court. At the hearing, Mike testified that when he filed for divorce, he requested a temporary restraining order to prevent Debbie

from leaving San Angelo with their children. Mike explained that Debbie had "made threats" to him saying that she was going to take the children to Florida to live with Peter Domaria, a "boyfriend that she had an on-line affair with." Mike stated that Debbie had "exchanged extensive E-mails" with Peter[1] and that at some point in the relationship Debbie and Peter began communicating by telephone. Mike testified that he had a telephone conversation with Peter in which he asked Peter to "end the affair, since she was a married woman, that we have children in this relationship that it affects, and begging him just to stop the relationship." According to Mike, Peter "didn't say anything" and "hung up." However, Peter sent Mike an email in which he wrote, "Buddy you call and threaten me again, I will take that phone and stick it so far up your [expletive] your mother won't even be able to find it. You better not do anything to her, because you will have to deal with me." Mike denied threatening Peter.

Mike testified that he was working for the San Angelo Community Medical Center and also part-time at a department store. He also testified that he was a member of the Lions Club and a den leader for the local Boy Scouts. He attended church at Glen Meadows Baptist Church and served on the advisory board for a volunteer group called Faith in Action. Mike explained that his children were currently involved in church activities and that he was planning on putting them in the Boy Scouts. Mike also explained that two of his three children were receiving occupational and speech therapy at the West Texas Rehabilitation Center in San Angelo and that he wanted the children be able to continue with their therapy. Mike further testified that he planned to stay in San Angelo

---

[1] Many of Debbie's emails to Peter were admitted into evidence and clearly establish the romantic nature of their relationship.

2

and that his parents would permanently relocate to San Angelo so that they could provide child care for the children when Mike was at work.

Mike also testified that Debbie had developed a relationship with another man, Kent Sherrill, and that Debbie recently told Mike that she planned to move to Lubbock with Sherrill. Additionally, Mike testified that, during the pendency of the divorce, Debbie indicated to him that she planned on moving to San Marcos to be close to her parents.

On cross-examination, Mike testified that he had held approximately nine jobs during the past seven years. He denied being unfaithful to Debbie during the course of their marriage.

Mike's mother Martha testified that she and Mike's father had plans to "relocate to San Angelo and continue to support Mike in helping out with the children." Martha explained to the court that she and her husband spent "extensive time" with the children and that the children loved spending time with them. Martha also testified that Mike has a sister and brother-in-law who live in San Angelo and recently had a child of their own. Martha stated that the boys "are already saying that they are going to take care of their little cousin." Martha expressed concern that if Debbie were to have primary custody of the children, she might move them to Lubbock. According to Martha, one of the children "voiced concerns about changing schools." Martha believed that "leaving the town would be a conflict for him."

Debbie testified that she was currently unemployed but that she had previously worked for a department store and also part-time as a bookkeeper for her former boyfriend, Peter. Debbie also testified that she was about to begin nursing school at South Plains Junior College in Lubbock.

Debbie denied that she had once planned on moving to San Marcos to live near her parents. Debbie also denied Mike's claim that she had thought about moving to Florida with Peter. When asked what happened to her relationship with Peter, Debbie explained:

> I think I kind of came to my senses. I realized that I made a mistake and I think he and I both, you know, severed the relationship. There were boundaries that were crossed at first and it eventually turned into the friendship that I needed and I couldn't make a commitment to anything else other than that.

Debbie testified that her parents had no plans to move from San Marcos to Lubbock with her and that she had no extended family in Lubbock. However, she did "have friends through friends." Debbie also stated that "Kent's family lives in Lubbock" and that "[t]he boys have gotten to know them." When asked if she "truly believe[d] that it's in the best interest of your sons to leave San Angelo and leave their home here and leave their extended family here and move to Lubbock with you," Debbie replied, "Absolutely. I am their mother."

Although Debbie indicated a willingness to remain in San Angelo with the children, she testified that she "would like the chance to start over and move to Lubbock." The following exchange took place between Debbie and the district court:

> The Court: Ma'am, if I ordered that your husband be the primary custodian of the children and he could establish their residence here in Tom Green County, your plan is still to move to Lubbock?
>
> The Witness: I feel at this point I need to recover from a divorce that has been very traumatic. I need the chance to move on with my life. I need to get established for myself so that I can support myself and my children.

The Court: Okay, and my question was, Ma'am, if the Court finds it's in the best interest of the children that your husband be named primary custodian and the children be living with him, do you plan to continue your move to Lubbock?

The Witness: I don't know, to be quite honest with you.

Debbie also testified that she had not discussed with Sherrill whether he was going to provide her with financial assistance in Lubbock. Debbie explained, "There is no need to talk about it. I am fully capable of supporting myself and my children." When asked how she intended to do so, Debbie testified, "Well, by financial aid. I qualify for quite a bit of financial aid. My schooling will be paid for. That will help with living expense[s] and then, if necessary, a part-time job, and then also child support." Debbie also testified that she had not yet made arrangements for her children to continue to receive therapy in Lubbock.

Debbie testified that she believed that she had a "stronger emotional bond" with the children than Mike did and that, prior to their separation, Mike did not spend much time with the children. Debbie further explained that she believed Mike expressed anger inappropriately in front of the children, did not dress the children appropriately, and did not properly administer asthma medicine to one of their children. Debbie testified that she believed Mike had engaged in three different extramarital affairs and that he had experienced employment problems when sexual harassment claims were made against him.

Debbie's mother Donna testified that she spent a substantial amount of time observing both Mike and Debbie care for the children and that Debbie was the "primary caretaker" and appeared to be "more attentive" to the children. Donna also testified that Mike did not "appear to have a close bond" with the children and that she thought he was "very domineering, very controlling." Donna

5

testified that she and her husband were willing to support Debbie financially and relocate to Lubbock if "necessary."[2] Donna also testified that she knew Debbie had been "thinking about" taking the children to Florida to be with Peter. When asked if it concerned her that Debbie had denied this under oath, Donna replied, "Sometimes people do things in desperation."

After the hearing, the district court appointed both parties joint managing conservators but found that it was "in the best interest of the children" for Mike to be appointed the "Joint Managing Conservator with the right to designate the primary residence of the children within Tom Green County, Texas." This appeal followed.

## DISCUSSION

In her only issue, Debbie contends that the district court erred in appointing Mike the children's primary custodian. The substance of Debbie's argument consists of a single paragraph[3] in which she summarily asserts that:

> For the emotional and physical well-being of the children, the Trial Court failed to consider the ramifications of removing the Appellant as the primary caregiver. These children were of tender age. The Appellee was—based on the record—absent a great deal of the time. The only stability these children had ever known [was] the presence of their mother, the Appellant.

---

[2] Debbie testified that she "wouldn't ask" her mother to relocate to Lubbock and, in fact, when her mother asked her if she wanted her to relocate to San Angelo, Debbie told her mother not to.

[3] Other than a recitation of the relevant family code provision, *see* Tex. Fam. Code Ann. § 153.002 (West 2002), Debbie's brief contains no citations to authority supporting her argument. Although we believe this issue is inadequately briefed, *see* Tex. R. App. P. 38.1(h), in the interest of justice we will address it.

"The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." Tex. Fam. Code Ann. § 153.002 (West 2002). However, Texas has no bright-line test to determine what is the best interest of the children. *Lenz v. Lenz*, 79 S.W.3d 10, 19 (Tex. 2002). Rather, each case must be decided on its unique set of facts. *See id*. Some of the factors considered in determining the best interest of the children include but are not limited to: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).

The trial court is given wide latitude in determining the best interests of the child and will be reversed only for an abuse of discretion. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *Coleman v. Coleman*, 109 S.W.3d 108, 110 (Tex. App.—Austin 2003, no pet.). A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to correctly analyze or apply the law. *In re Ford Motor Co.*, 165 S.W.3d 315, 317 (Tex. 2005). As long as some evidence of a substantive and probative character exists to support the order, we will not substitute our judgment for that of the trial court. *Echols v. Olivarez*, 85 S.W.3d 475, 477 (Tex. App.—Austin 2002, no pet.).

7

After reviewing the record, we cannot conclude that the district court abused its discretion in appointing Mike the primary custodian of the children. The public policy of this state is to "provide a safe, stable, and nonviolent environment for the child." Tex. Fam. Code Ann. § 153.001(a)(2) (West 2002). There is some substantive and probative evidence in the record from which a rational trier of fact could conclude that Mike would provide a more stable environment for the children than Debbie. Mike intends to remain in San Angelo, where one of the children is attending school, two of the children are attending therapy, and all three of the children are attending church. San Angelo is also where the children's aunt, uncle, and cousin live and where the children's paternal grandparents plan to relocate. Debbie, on the other hand, intends to move to Lubbock, where the children have no extended family and no connections. There is also evidence that at one point Debbie considered moving to Florida, a location even farther removed from the children's current surroundings. The district court could rationally conclude from this evidence that Debbie was willing to live wherever she or her current boyfriend wanted to live. Although Debbie expressed some willingness to remain in San Angelo, it is clear from the record that she wants to live elsewhere to "recover from a divorce that has been very traumatic." Debbie also testified that she was currently unemployed and would depend on student financial aid for support. Mike, on the other hand, was currently employed. The district court could have rationally concluded that Mike would be a more stable provider for the children than Debbie. Finally, the record indicates that Mike intended to continue to provide for the special needs of the children, while Debbie had not yet made any arrangements to ensure that the children would continue to receive therapy in Lubbock.

8

Based on the facts of this case, we conclude that the district court did not abuse its discretion in awarding Mike primary custody of the children. We overrule Debbie's sole issue on appeal.

**CONCLUSION**

Having overruled Debbie's issue on appeal, we affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Affirmed

Filed: October 20, 2006