

In The
# Court of Appeals
### Seventh District of Texas at Amarillo

No. 07-23-00363-CV

## IN THE MATTER OF THE MARRIAGE OF MICHAEL BENTROTT AND COURTNEY BENTROTT AND IN THE INTEREST OF B.A.B. AND M.L.B., CHILDREN

On Appeal from the 455th District Court
Travis County, Texas
Trial Court No. D-1-FM-21-001795, Honorable Daniella DeSeta Lyttle, Presiding

October 11, 2024

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and YARBROUGH, JJ.

Appellant, Courtney Bentrott, appeals from the trial court's *Final Decree of Divorce* dissolving her marriage to Appellee, Michael Bentrott. By her original and supplemental brief, she presents the following issues challenging the trial court's designation of joint managing conservatorship and Michael's possession and supervision of their children:[1]

---

[1] Originally appealed to the Third Court of Appeals, this appeal was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. TEX. GOV'T CODE ANN. § 73.001. Should a conflict exist between precedent of the Third Court of Appeals and this Court on any relevant issue, this appeal will be decided in accordance with the precedent of the transferor court. TEX. R. APP. P. 41.3.

(1) the trial court abused its discretion by rendering a step-up possession and access schedule at the final hearing;

(2) alternatively, the trial court abused its discretion in rendering a step-up possession and access schedule at the final hearing which awards Michael unsupervised possession and access and which included the children's bill of rights in the order;

(3) the trial court abused its discretion in failing to make a finding of family violence or awarding her sole managing conservatorship; and

(4) modification is an appropriate remedy for a more conservative schedule that contemplates the present circumstances affecting the safety and welfare of the minor children.

We affirm.[2]

## BACKGROUND[3]

Courtney and Michael married in April 2015, and have two children, a son born in 2018 and a daughter born in 2020. The parties ceased living together in October 2020, several months after their daughter was born. The event prompting the separation was Courtney's discovery of pornography and escort websites Michael left open on his computer.

Michael admitted he is a sex addict and abuses alcohol. He has been diagnosed with post-traumatic stress disorder from early childhood sexual abuse, depression, and anxiety. He testified that during the first six months following the birth of each child, he viewed pornography and masturbated in the evenings while on "baby duty" "about half a

---

[2] By her amended notice of appeal, Courtney specifies she is not challenging any issues related to the divorce, property division, attorney's fees, child support, or any issues contained in Title 1 of the Texas Family Code.

[3] Michael objects to certain factual recitations presented in Courtney's brief. This Court's opinion is based on the facts as presented by the appellate record.

dozen times with each child." After the birth of his son, he described "sitting on the couch, sleeping baby wrapped in a swaddle in his arm, iPad propped up on the couch masturbating." He denied that his sexual stimulation involved his children and attributed his conduct to consumption of alcohol which impaired his judgment.[4]

Months before filing for divorce, Michael self-reported incidents of his past sexual deviance to Courtney. He successfully completed an in-patient treatment program and was discharged in November 2020. He also employed four therapists to treat his addictions and began attending Sex Addicts Anonymous.

In March 2021, Michael filed his petition for divorce. A few months later, Courtney counter-petitioned for divorce and alleged that Michael had engaged in a history or pattern of family violence as defined in section 71.004 of the Family Code. She requested appointment as sole managing conservator and asserted that joint managing conservatorship would not be in the best interests of their children. After several delays, trial commenced on May 15, 2023.

Dr. Stephen A. Thorne was ordered by the trial court to conduct a psychosexual evaluation of Michael and to make recommendations for treatment. His report acknowledged that Michael self-reported a history of drug and alcohol abuse as well as his obsession with pornography and escorts. He told Dr. Thorne of the incidents in which he masturbated while holding his children. He expressed that no member of Michael's treatment team believes he is sexually attracted to or aroused by minors. Dr. Thorne noted the inability to know Michael's motivation for his inappropriate behavior but

---

[4] Michael's psychologists never diagnosed him with pedophilia or an attraction to children.

expressed concern because it was sexually deviant in nature and "reflective of extremely poor judgment." He reported that Michael's excessive consumption of pornography carries a relatively low risk for future sexual deviancy. Dr. Thorne interviewed Michael's therapists and specified in his report that they described Michael in positive terms as being "active, engaged, and insightful" and progressing in his treatment. He concluded that Michael is a sex addict but does not have a history of sexually deviant thoughts involving children. The result of his psychosexual evaluation was that Michael continue to participate in comprehensive treatment.

The divorce decree appointed the parents joint managing conservators with Courtney having the exclusive right to designate the primary residence of the children, then three and five years old. It contained a four-phase modified step-up possession order which commenced on May 20, 2023, and required Michael to comply with certain conditions to transition from supervised to unsupervised possession and culminated in a standard possession and access order.[5] Progression through each phase was conditioned on Michael "following all requirements" "as well as all injunctions."

The divorce decree also included the following conditions for Michael to transition through each respective phase as follows:

> IT IS ORDERED that MICHAEL BENTROTT's transition through each respective phase as outlined are conditioned upon compliance with the following:

---

[5] Courtney filed a *Motion for Temporary Orders and to Stay Enforcement* in this Court on January 23, 2024, seeking to suspend the portions of the divorce decree related to conservatorship and custody. The motion was denied. *In re Marriage of Bentrott*, No. 07-23-00363-CV, 2024 Tex. App. LEXIS 1237, at *5 (Tex. App.—Amarillo Feb. 15, 2024, order).

1. MICHAEL BENTROTT shall continue treatment with the following therapists for so long as each applicable therapist recommends continued treatment:

   a. Paul Pope, MA, LPC, CSAT;
   b. Nicole Tableriou, LPC, LCDC;
   c. Mary Hoofnagle, LPC, PRT, PLLC, and
   d. Jessica Warner, MA, LPC.

2. MICHAEL BENTROTT shall continue to participate in meetings of Sex Addicts Anonymous and shall work through all of the steps.

3. MICHAEL BENTROTT shall refrain from pornographic consumption during any periods of possession.

4. MICHAEL BENTROTT shall ensure that he does not, in any way, identify the children when communicating (for sexual purposes) with other individuals who do not already have some type of relationship with the children.

5. MICHAEL BENTROTT shall not use the children's phone, email account, and/or social media accounts to engage in conversations with individuals/groups he is seeking sexual encounters with.

6. MICHAEL BENTROTT shall not share his home address with, or invite to his home, individuals who he is meeting for the sole purpose of sexual activity.

7. MICHAEL BENTROTT shall utilize accountability software (for all electronic devices) during his periods of possession of and access of the children, that will allow selected individuals to receive reports on what he views on the internet while exercising possession of the children. Said reports shall be made available to MICHAEL BENTROTT's Sex Addicts Anonymous Sponsor, [B.F.], and Sex Addiction Therapist Paul Pope.

The trial court entered Findings of Fact and Conclusions of Law. The following findings are relevant to Courtney's issues pertaining to conservatorship issues:[6]

---

[6] Michael maintains that Courtney did not identify the findings she is challenging which makes them binding on this Court. However, a challenge to an unidentified finding may be sufficient if it is included in the arguments and the challenged findings can be fairly determined from the argument. *See generally*

5

13. It is in the best interest of the children that MICHAEL BENTROTT and COURTNEY BENTROTT be appointed joint managing conservators of the children and that COURTNEY BENTROTT have the right to designate the children's primary residence.

14. The Court finds it is in the best interest of the children and in accordance with section 153.001 of the Texas Family Code, it is the public policy of Texas, to assure that child[ren] will have frequent and continuing contact with parents who have shown the ability to act in the best interest of the child[ren], to provide a safe, stable, and nonviolent environment . . . .

19. The Court finds that it is in the children's best interest that MICHAEL BENTROTT continue his treatment with Paul Pope, Nicole Tableriou, Mary Hoofnagle, and Jessica Warner, with treatment to continue until each therapist deems appropriate, and continue to participate in Sex Addicts Anonymous and work through all the steps.

20. The Court finds that it is in the children's best interest that MICHAEL BENTROTT participate in the recommendations in Dr. Thorne's evaluation.

28. The Court finds that the possession and access, including electronic communication ordered by the Court and contained in the final Decree of Divorce is in the best interest of the children.

29. The periods of possession vary from the Standard Possession Order, for the following reasons, which were supported [by] credible evidence, including expert testimony admitted in support:

    a. The Court finds that MICHAEL BENTROTT was previously ordered to have supervised visitation of and access to the children;

    b. The Court finds that MICHAEL BENTROTT has engaged in significant amounts of evaluation, therapy, and mental health treatment with multiple providers during the pendency of the underlying suit for divorce;

    c. The Court finds that MICHAEL BENTROTT has exhibited significant and substantial progress in his therapeutic and mental health treatment during the pendency of the underlying suit for divorce;

    d. The Court finds that the possession and access schedule, including electronic communication, ordered and contained in

---

*Holley v. Watts*, 629 S.W.2d 694, 696 (Tex. 1992) (citing *Calvert*, "*No Evidence*" *and* "*Insufficient Evidence*" *Points of Error*, 38 TEX. L. REV. 361 (1960)).  Courtney's arguments challenge the findings set forth.

the Final Decree of Divorce, which contains several step-up schedules, with increasing periods of possession and access for MICHAEL BENTROTT ending in a Standard Possession Schedule with elections, is in the children's best interest and is adequate to protect the best interest of the children, including their physical health, emotional development, safety, and well-being.

### ANALYSIS

Before addressing Courtney's issues, we note Michael maintains this Court should decline review of issues one and four for being inadequately briefed and therefore not in compliance with Rule 38.1 of the Texas Rules of Appellate Procedure. Under Rule 38.9, however, this Court is instructed to construe briefing rules liberally. *See Anastasi v. McHorse*, No. 03-23-00274-CV, 2024 Tex. App. LEXIS 1681, at *13–14 (Tex. App.—Austin March 7, 2024, no pet.) (mem. op.) (construing pro se brief liberally, but reasonably so the right to appeal is not lost by waiver) (citing *Lion Copolymer Holdings*, *LLC v. Lion Polymers*, *LLC*, 614 S.W.3d 729, 733 (Tex. 2020)). Thus, we disagree with Michael and will address Courtney's first and fourth issues.

At the core of Courtney's complaints is the trial court's failure to make a finding that Michael committed family violence. The lack of such a finding is critical to her arguments. Thus, we will address issue three first to determine if the trial court abused its discretion in not making a family violence finding and awarding her sole managing conservatorship.

7

**ISSUE THREE—FAILURE TO FIND FAMILY VIOLENCE AND AWARD COURTNEY SOLE MANAGING CONSERVATORSHIP**

Courtney contends that Michael's sexual proclivities, which he does not deny, equates to sexual abuse of his children which should have prevented him from being named a joint managing conservator. She asks this Court to reevaluate the trial court's failure to make a finding of family violence. We decline to do so and defer to the trial court's evaluation of the evidence.

Family violence means an act by a family member against another family member that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent prohibited conduct. TEX. FAM. CODE ANN. § 71.004(1). Family violence may also include "abuse" as the term is defined by section 261.001(1)(E) of the Family Code. *Id.* at § 71.004(2). Subparagraph E defines "abuse" as an act or omission of sexual conduct harmful to a child's mental, emotional, or physical welfare, including conduct that constitutes sexual abuse of [a] young child under certain sections of the Texas Penal Code. *Id.* at § 261.001(1)(E).

During her testimony, Courtney referenced section 21.11 of the Texas Penal Code to support her contention that Michael's conduct with his children constituted indecency with a child.[7] We disagree with her statutory interpretation. A person commits the offense of indecency with a child by contact if he "engages in sexual contact with the child or causes the child to engage in sexual contact." TEX. PENAL CODE ANN. § 21.11(a). Section 21.11 defines sexual contact as engaging in the following acts, if committed with the intent

---

[7] Dr. Daphny Ainslie testified Michael's conduct met the definition of child sexual abuse per the Centers for Disease Control, but that is not the standard in Texas under the Family Code or the Penal Code.

to arouse or gratify the sexual desire of any person: (1) any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child; or (2) any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person. TEX. PENAL CODE ANN. § 21.11(c).

Courtney testified Michael's conduct was done "purposefully" according to his own testimony, but she did not identify any evidence satisfying the elements of indecency of a child.[8] When she was asked, "[s]o we have no evidence, none in three days . . . that he gratified himself as a result of the child or because of his child," she answered, "correct." She testified it would be in the best interests of the children to see Michael only in a supervised setting. She further testified, hypothetically, that even if Michael had not committed the sexual acts in his children's presence, she would still advocate for supervised visitation based on his behavior involving escorts during fertility treatments, during pregnancy, and after she gave birth.

Dr. Daphny Ainslie, a forensic evaluator who was court-ordered to conduct a child custody evaluation and make a recommendation on possession and access, testified unfavorably to Michael.[9] She spoke with Michael's therapists, reviewed their reports, and had a brief interview with Michael. While she agreed with Dr. Thorne that Michael's conduct was "inappropriate, sexually deviant, and reflective of poor judgment and

---

[8] During cross-examination she was asked, hypothetically, if she considered it sexual abuse for her child to sleep in a bassinet next to her bed while she pleasured herself. She answered it depended on the circumstances.

[9] The evaluations revealed Michael was a victim of sexual abuse as a minor and hid his sexual deviancy for years.

9

problematic impulse control issues" and that his conduct was not the product of sexual attraction to children, her opinion was that Michael had serious impulsivity, was deceitful, and was a child sexual abuser. She diagnosed him with antisocial personally disorder. Her recommendation was that Michael have no unsupervised access to the children. She opined that other experts treating Michael who testified favorably for him were only working with information he provided. She believed Michael's conduct with his daughter was intentional. Ultimately, she did not recommend unsupervised possession until the children were old enough to report any incidents.

Michael employed four therapists to treat his sex and alcohol addictions. They testified in his favor as follows:

- Nicole Tableriou treated Michael for substance abuse. She diagnosed him with PTSD, anxiety and alcohol use disorder in sustained remission— twelve months or more without alcohol abuse. She acknowledged he sees multiple counselors and has obtained as much treatment as possible. She opined Michael did not present a risk to others, including children. She discounted Dr. Ainslie's evaluation of Michael after consulting with her for only twenty-one minutes while she had treated Michael for nineteen months.

- Jessica Warner began counseling Michael in March 2021 about healthy sexuality and relationships. She testified he attended all his sessions. He moved into an apartment, was working out, maintaining his employment, and following the rules for visitation. He described his sobriety as strong. She assisted him in using dating apps to find a healthy relationship. She answered "[n]o" when asked if Michael was attracted to children. She testified she had one conversation with Dr. Ainslie of ten to fifteen minutes in duration.

- Mary Hoofnagle, a registered play therapist who treated Michael, testified she provided eye movement desensitization reprocessing (EMDR) therapy, a form of mental health treatment for sexual abuse suffered by him as a minor. She explained that addiction is often a response to trauma. She was questioned on the process of the treatment and confirmed that Michael was making progress in coping with his past trauma. She disagreed with Dr. Ainslie's opinion that Michael "consistently exhibited limited insight into his own process."

10

- Paul Pope, a certified sexual addiction therapist, treated Michael for approximately two and a half years before the final hearing. He testified Michael's symptoms for posttraumatic stress disorder and major depressive disorder had eased. His anxiety disorder remained the same. He answered "no" when asked if Michael suffered from a paraphilic disorder which involves expressions of sexuality outside the norm. Michael was attending a weekly group session to address his sex addiction. He testified Michael is able to regulate his emotions when he becomes stressed or overwhelmed and managed those situations in a healthy way rather than through his addiction. He answered "yes" when asked if Michael was determined and devoted to "working his way through the therapy to be a better person. He answered "no" when asked if he had any concerns that Michael's sex addiction posed a threat to others. He denied that Michael had any sexual proclivities toward children. He opined Michael had recovered from compulsively acting out but recommended continued therapy.

As is evident from Michael's therapists and Dr. Thorne's report, Michael's children were not the source of his sexual arousal or gratification. None of the experts diagnosed him with pedophilia. There is no evidence that contact between Michael and his children was committed with an intent to arouse or gratify himself. He successfully sought in-patient treatment for his alcoholism and sex addiction and employed four therapists to treat those addictions. The experts testified he made significant progress and Michael, despite admitting to a relapse, testified he had been sober for more than 742 days before the final hearing.

The general manager for Advocate for All,[10] who was assigned to supervise Michael's periods of possession, testified that visits between Michael and his children were "splendid" and "without flaw." Michael was "one hundred percent focused on his children." The manager further testified Michael's behavior did not require any correction

---

[10] He testified one of his employees requested to be taken off Michael's case when she discovered that Courtney had been recording conversations on her cell phone in violation of Advocate for All's policies.

or redirection and he constantly managed to provide a "warm, welcoming, soft and gentle environment" for his children. The evidence showed his children were not nervous or scared in his presence and Michael was "a calming presence to them." They smiled upon seeing him, reached out for hugs, and expressed their love for him.

Absent from the evidence is any indication that Michael engaged in family violence or abuse as defined by the Family Code or the Penal Code. In deferring to the trial court, we cannot say it abused its discretion in failing to make a finding of family violence.

Courtney also claims the trial court abused its discretion in naming Michael a joint managing conservator due to his history of family violence. Section 153.004(b) provides that a "court may not appoint joint managing conservators if credible evidence is presented of a history or pattern of past or present child neglect, or physical or sexual abuse by one parent directed against the other parent, a spouse, or a child, including a sexual assault . . . . It is a rebuttable presumption that the appointment of a parent as the sole managing conservator of a child or as the conservator who has the exclusive right to determine the primary residence of a child is not in the best interest of the child if credible evidence is presented of a history or pattern of past or present child neglect, or physical or sexual abuse . . . ." TEX. FAM. CODE ANN. § 153.004(b). Subparagraph (e) provides that it is a rebuttable presumption that it is not in the best interest of a child for a parent to have unsupervised visitation with the child if credible evidence is presented of a history or pattern of past or present child neglect or abuse or family violence. *Id.* at § 153.004(e).

As discussed *supra*, there is insufficient evidence to support an entry of a finding of family violence or a history of family violence. We conclude the trial court did not

12

abuse its discretion in appointing Michael as a joint managing conservator. Issue three is overruled.

**ISSUES ONE AND TWO—ABUSE OF DISCRETION IN ENTERING A STEP-UP POSSESSION ORDER**

Courtney maintains the trial court abused its discretion in rendering a step-up possession and access schedule without any statutory authority and because it relied on speculation instead of long-standing principles that obligated it to assess the facts as presented. She maintains the court's order is not in the children's best interests and is further complicated by inclusion of the Children's Bill of Rights.[11] She also claims the step-up possession order improperly built in a modification order without satisfying the requirements set forth in section 156.101(a) of the Family Code. We disagree.

A trial court may determine a conservator's appropriate level of possession and access within the parameters of sections 153.131(a) and 153.191 of the Family Code dealing with presumptions in appointing parents as sole, joint, or possessory conservators. *See In re J.J.R.S.*, 627 S.W.3d 211, 218 (Tex. 2021). When a trial court deviates from the standard possession order, it may consider (1) a child's age, developmental status, circumstances, needs, and best interest; (2) the circumstances of the managing conservator and of the parent named as possessory conservator; and (3) any other relevant factor. TEX. FAM. CODE ANN. § 153.256. The Family Code encourages frequent contact between a child and parent following a divorce. *See id.* at § 153.251(b).

---

[11] The Children's Bill of Rights is a lengthy list of do's and don'ts for parents to ensure the well-being of their children and fairness in conservatorship arrangements.

13

"The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." TEX. FAM. CODE ANN. § 153.002. A trial court's determination of what is in the child's best interest with respect to the terms and conditions of conservatorship is reviewed for abuse of discretion. *In re J.J.R.S.*, 627 S.W.3d at 218. We assess the best interest finding by the factors announced in *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

The trial court is in the best position to "observe the demeanor and personalities of the witnesses and can 'feel' the forces, powers, and influences that cannot be discerned by merely reading the record." *In re J.J.R.S.*, 627 S.W.3d at 218. In family law cases, the traditional sufficiency standards overlap with the abuse-of-discretion standard. *In re Maynard*, No. 07-23-00202-CV, 2024 Tex. App. LEXIS 4562, at *3 n.3 (Tex. App.—Amarillo June 26, 2024, no pet.) (mem. op.). To determine whether there has been an abuse of discretion because the evidence is legally or factually insufficient to support the trial court's decision we must determine (1) whether the trial court had sufficient evidence on which to exercise its discretion and (2) whether the trial court erred in its application of that discretion. *Echols v. Olivarez*, 85 S.W.3d 475, 477–78 (Tex. App.—Austin 2002, no pet.). The traditional sufficiency review comes into play with regard to the first question. *Id.* at 478. There is no abuse of discretion "as long as some evidence of a substantive and probative character exists to support the trial court's decision." *Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex. App.—Austin 2006, pet. denied).

As previously discussed, Michael's therapists testified he was progressing with his treatment and despite the uncertainty of motivation for his inappropriate conduct, the evidence did not show that the trial court's step-up possession order was not in the children's best interests. Witnesses who supervised Michael with his children described their visits as "splendid" and "without flaw." He provided a "warm, welcoming, soft and gentle environment." His behavior did not require correction and he was a "calming presence" to his children. As recommended by his therapists, he continued his course of treatment and made significant progress. Pope testified that Michael had recovered from compulsively acting out. There was insufficient evidence questioning Michael's parenting abilities. There was also insufficient evidence that the parent-child relationship between Michael and his children was inappropriate.

Courtney asserts the trial court relied on speculation in entering a step-up possession order, but the record is replete with evidence of "a substantive and probative character" to support the trial court's modified possession order. The Third Court of Appeals upheld a step-up possession order in *In re L.M.M.*, No. 03-04-00452-CV, 2005 Tex. App. LEXIS 7191, at *6–8 (Tex. App.—Austin Aug. 31, 2005, no pet.) (mem. op.). Relying on *In re C.A.C.*, No. 07-22-00029-CV, 2022 Tex. App. LEXIS 9110, at *5–6 (Tex. App.—Amarillo Dec. 14, 2022, no pet.), Courtney argues the step-up possession order did not contain any enforceable measures or include built-in penalties for Michael's failure to comply. We disagree. The trial court imposed very specific conditions and injunctions for Michael to follow or risk transitioning to less restrictive phases of possession. He was required to install accountability software on his devices which generated reports to designated individuals of his internet activity. Logically, if Michael did not comply with all

15

the requirements and injunctions specified, he would be penalized by not transitioning to the next phase with the ultimate goal of unsupervised possession. The trial court's order did provide safeguards and penalties. Courtney's arguments are not supported by the record.

The trial court was in the best position to observe the demeanor and personalities of the witnesses. We find the evidence is legally and factually sufficient to support the trial court's exercise of discretion in entering a modified possession order that transitioned into a standard possession order which is in the children's best interests. Issues one and two are overruled.

**ISSUE FOUR—MODIFICATION OF CONSERVATORSHIP SCHEDULE**

Courtney seeks modification of the divorce decree's conservatorship determinations by requesting a "more conservative schedule" that considers the safety and welfare of the children. A final decree of divorce that resolves custody issues is "res judicata of the best interests of a minor child as to conditions then existing." *Knowles v. Grimes*, 437 S.W.2d 816, 817 (Tex. 1969). Modification of conservatorship of a child is proper if it is in the child's best interest and the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed since the earlier of the date of the rendition of the order or the date of the signing of a mediated or collaborative law settlement agreement on which the order is based. TEX. FAM. CODE ANN. § 156.101(a)(1). In the absence of a material and substantial change, the disturbing influence of litigation should be discouraged. *Knowles*, 437 S.W.2d at 817.

16

Here, the date the "order" was rendered was May 17, 2023.[12]  In her first issue, Courtney argued the step-up possession order included an improper modification order and constituted an abuse of discretion because of the lack of the material and substantial change requirements of section 156.101(a).  Yet she now seeks modification of the final divorce decree without satisfying her burden to show a material and substantial change since the date of the divorce decree.  The terms of a divorce decree addressing child custody continue to be subject to modification.  But before this Court may consider Courtney's request for a more conservative schedule, a separate modification suit, pursuant to chapter 156 of the Family Code alleging a material and substantial change since rendition of the divorce, is required to be filed and ruled on by the trial court.  We overrule issue four.

### CONCLUSION

The trial court's *Final Decree of Divorce* is affirmed.


Alex Yarbrough
Justice

---

[12] The final decree was not signed until August 8, 2023.